# IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

**January 2014 Term**

_____

No. 12-0791

_____

**FILED**

**January 29, 2014**

released at 3:00 p.m.
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**STATE OF WEST VIRGINIA,**
**Plaintiff Below, Respondent**

**V.**

**ROBERT SCOTT R., JR.,**
**Defendant Below, Petitioner**

_____

**Appeal from the Circuit Court of Mineral County**
**Honorable Phil Jordan, Judge**
**Criminal Action No. 10-F-147**

**AFFIRMED**

_____

**Submitted:  January 15, 2014**
**Filed:  January 29, 2014**

Nicholas T. James                        Patrick Morrisey
Keyser, West Virginia                   Attorney General
Attorney for Petitioner                 Julie A. Warren
                                        Assistant Attorney General
                                        Robert D. Goldberg
                                        Assistant Attorney General
                                        Charleston, West Virginia
                                        Attorneys for Respondent

**The Opinion of the Court was delivered PER CURIAM.**

**SYLLABUS BY THE COURT**

1.     "A judgment of conviction will not be reversed because of improper remarks by a prosecuting attorney in his opening statement to a jury which do not clearly prejudice the accused or result in manifest injustice."  Syllabus point 1, *State v. Dunn*, 162 W. Va. 63, 246 S.E.2d 245 (1978).

2.     "If either the prosecutor or defense counsel believes the other has made improper remarks to the jury, a timely objection should be made coupled with a request to the court to instruct the jury to disregard the remarks."  Syllabus point 5, in part, *State v. Grubbs*, 178 W. Va. 811, 364 S.E.2d 824 (1987).

3.     "Failure to make timely and proper objection to remarks of counsel made in the presence of the jury, during the trial of a case, constitutes a waiver of the right to raise the question thereafter either in the trial court or in the appellate court."  Syllabus point 6, *Yuncke v. Welker*, 128 W. Va. 299, 36 S.E.2d 410 (1945).

4.     "Where improper evidence of a nonconstitutional nature is introduced by the State in a criminal trial, the test to determine if the error is harmless is: (1) the inadmissible evidence must be removed from the State's case and a determination made as

to whether the remaining evidence is sufficient to convince impartial minds of the defendant's guilt beyond a reasonable doubt; (2) if the remaining evidence is found to be insufficient, the error is not harmless; (3) if the remaining evidence is sufficient to support the conviction, an analysis must then be made to determine whether the error had any prejudicial effect on the jury." Syllabus point 2, *State v. Atkins*, 163 W. Va. 502, 261 S.E.2d 55 (1979).

5.    "Before any in camera inspection of statutorily protected communications can be justified, a defendant must show both relevancy and a legitimate need for access to the communications. This preliminary showing is not met by bald and unilluminating allegations that the protected communications could be relevant or that the very circumstances of the communications indicate they are likely to be relevant or material to the case. Similarly, an assertion that inspection of the communications is needed only for a possible attack on credibility is also rejected. On the other hand, if a defendant can establish by credible evidence that the protected communications are likely to be useful to his defense, the trial judge should review the communications in camera." Syllabus point 3, *State v. Roy*, 194 W. Va. 276, 460 S.E.2d 277 (1995).

6.    "A defendant who wishes to cross-examine an alleged victim of a sexual offense about or otherwise introduce evidence about other statements that the alleged victim

has made about being the victim of sexual misconduct must initially present evidence regarding the statements to the court out of the presence of the jury and with fair notice to the prosecution, which presentation may in the court's discretion be limited to proffer, affidavit, or other method that properly protects both the rights of the defendant and the alleged victim and effectuates the purpose of our rape shield law, W. Va. Code, 61–8B–11 [1986] and West Virginia Rules of Evidence 404(a)(3) [1994]." Syllabus point 3, *State v. Quinn*, 200 W. Va. 432, 490 S.E.2d 34 (1997).

7.      "If the trial court finds that there is a strong probability that the alleged victim of a sexual offense has made other statements which are false of being the victim of sexual misconduct, evidence relating to those statements may be considered by the court outside of the scope of our rape shield law, W. Va. Code, 61–8B–11 [1986] and West Virginia Rules of Evidence 404(a)(3) [1994]." Syllabus point 4, *State v. Quinn*, 200 W. Va. 432, 490 S.E.2d 34 (1997).

8.      "The test used to determine whether a trial court's exclusion of proffered evidence under our rape shield law violated a defendant's due process right to a fair trial is (1) whether that testimony was relevant; (2) whether the probative value of the evidence outweighed its prejudicial effect; and (3) whether the State's compelling interests in excluding the evidence outweighed the defendant's right to present relevant evidence

supportive of his or her defense.  Under this test, we will reverse a trial court's ruling only if there has been a clear abuse of discretion."  Syllabus point 6, *State v. Guthrie*, 205 W. Va. 326, 518 S.E.2d 83 (1999).

9.     "The attorney for the state may by leave of court file a dismissal of an indictment, information or complaint, and the prosecution shall thereupon terminate."  Syllabus point 1, in part, *State v. McWilliams*, 177 W. Va. 369, 352 S.E.2d 120 (1986).

**Per Curiam:**

Robert Scott R., Jr. (hereinafter "Mr. R.")[1] appeals an order of the Circuit Court of Mineral County sentencing him to prison after he was convicted by a jury of committing thirty sexual offenses against four minors. The circuit court sentenced Mr. R. to a total of not less than 125 years nor more than 295 years in prison.[2] Here, Mr. R. contends that the circuit court committed error by (1) denying his motion for mistrial due to opening remarks by the prosecutor, (2) failing to conduct a hearing before admitting Rule 404(b) evidence, (3) denying his motion to allow discovery of the mental health records of one of the victims, (4) limiting cross-examination of two witnesses, and (5) allowing the indictment to be amended. After a careful review of the briefs, the record submitted on appeal, and listening to the argument of the parties, we affirm.

## I.

## FACTUAL AND PROCEDURAL HISTORY

---

[1]Due to the sensitive facts involved in this case, we refer to the petitioner and his victims by their last initials. *See, e.g., State v. Larry A.H.*, 230 W. Va. 709, 742 S.E.2d 125 (2013) (per curiam); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

[2]The sentences for thirteen of the offenses were ordered to be served consecutively. The sentences for the remaining seventeen offenses were ordered to run concurrently with each other and the consecutive sentences.

This case involved sexual offenses against four minors: C.R., J. D., A. M.; and R.R.[3] All of the offenses occurred at various times at Mr. R.'s home during the period from 2008 through 2010.[4] At the time of the offenses, Mr. R. was married. His wife had three children before the marriage.[5] Mr. R. had one child, a son, during the marriage.[6]

The State became aware of Mr. R.'s sexual abuse of the minors based upon an initial report by one of the victims, A.M. After an investigation, a grand jury returned a fifty-six count indictment against Mr. R. on September 8, 2010. A jury trial commenced on October 24, 2011. During the trial, each victim testified via live closed-circuit television from a magistrate courtroom. The State also called fourteen other witnesses. Mr. R. testified and denied committing any of the crimes.[7] The jury returned a verdict on October 27, 2011, convicting Mr. R. of thirty sexual offenses.[8] The relevant facts from the testimony of each victim is set out separately below.

[3]R.R. was Mr. R.'s stepdaughter.

[4]However, some of the sexual conduct perpetrated against R.R. occurred prior to 2008.

[5]His wife had two sons and a daughter–R.R. Mr. R. legally adopted his stepchildren.

[6]At the time of the trial, Mr. R.'s wife had divorced him.

[7]The only other witness called by Mr. R. was an employee at a school J.D. attended.

[8]Only thirty-five counts of the indictment were submitted to the jury. The jury was hung on five of the counts submitted to it.

C.R. testified at the trial that, during the period from March 2009 through March 2010, she regularly visited the home of Mr. R. During this period, C.R., who was then fifteen, was dating one of Mr. R.'s stepsons. C.R. testified that she frequently stayed at Mr. R.'s home on weekends. When C.R. stayed overnight at the home she would sleep on a couch with Mr. R.'s stepdaughter.[9] At the trial, C.R. testified to an incident in the home when Mr. R. forced her onto his bed and rubbed against her buttocks with his groin.[10] As a result of this conduct, the jury convicted Mr. R. of sexual abuse by a custodian and sexual abuse in the first degree.

J.D. testified that she knew Mr. R. and his family well.[11] In August or September of 2009, J.D. spent the night at Mr. R.'s home. J.D. was fourteen years old at the time. Mr. R. and his wife had gone out for the evening. It appears that when they returned home, Mr. R.'s wife was intoxicated. The record is not clear; but, when the couple went to bed, J.D. also was in their bed. J.D. testified that Mr. R. had sexual intercourse with her while his wife was in the bed. Mr. R.'s wife testified about the incident as follows:[12]

---

[9]Mr. R.'s stepdaughter slept on the couch because she did not have a bed.

[10]C.R. later reported this incident to Mr. R.'s wife.

[11]J.D. had a hearing impairment.

[12]Mr. R.'s wife also has a hearing impairment. During the trial, the court provided her with a hearing impaired interpreter.

Q. No. I've moved on to something else. Where you indicated that you had actually observed someone being touched in the home?

A. Oh, okay. That night Bobby had taken me out drinking and we had the two twin girls at my house. So my daughter had friends to stay over with her and I was drunk. He wasn't drunk. [J.D.] was in our room, our room. And she had sex with him and I saw it and told him to stop, and he got mad at me.

Q. Okay. Could you describe when you first realized that that was going on?

A. It hurt my feelings because she was a young girl and I'm his wife. I couldn't believe it. Why was he having another girl?

Q. What, what were you doing at the time you first realized it was happening?

A. I was in the bed as well. I was getting up to go to the bathroom and then I saw him and her were in the bed.

Q. Did you know that she was in the bed before that?

A. No.

Q. Okay. Had you been sleeping?

A. I was asleep in our bed, yes.

Q. Okay. If you could, be very specific about what you saw? We just need to be able to convey that for the jury as to what you actually observed?

A. I saw her, [J.D.], she was on top of Bobby and I told him to stop. I told them to stop. And he got mad at me. He got mad at me and told me to shut the [f**k] up. And he pushed my head against the wall.

4

As a result of the sexual conduct with J.D., the jury convicted Mr. R. of sexual abuse by a custodian, sexual assault in the second degree, and sexual assault in the third degree.

A.M. testified during the trial that she was a good friend of Mr. R.'s stepdaughter, R.R. A.M. frequently stayed overnight at their home. When A.M. was about thirteen years old, Mr. R. forced her to engage in sexual conduct on three separate occasions during the period from May 2009 to September 2009. The first incident involved Mr. R.'s stepdaughter R.R. A.M. testified that Mr. R. forced her and R.R. to use their hands to masturbate him until he ejaculated.[13] The second incident involved Mr. R.'s then fifteen-year-old stepson, J.R. A.M. testified that Mr. R. forced her and J.R. to engage in sexual intercourse.[14] The third incident involved two sexual encounters with Mr. R. A.M. testified that during her last sleep-over, Mr. R. forced her to masturbate him, but he did not ejaculate. Shortly afterwards, Mr. R. followed her into a bathroom and engaged in sexual intercourse with her.[15] As a result of the sexual conduct with A.M., the jury convicted Mr. R. of four counts of sexual abuse by a custodian, two counts of sexual abuse in the first degree, and two counts of sexual assault in the second degree.

---

[13]R.R. corroborated this incident during her testimony.

[14]J.R. corroborated this testimony.

[15]Several months after this last incident, A.M. informed her mother about the sexual abuse. Her mother reported the matter to the police. This report apparently launched the investigation that culminated with more victims coming forward and the instant prosecution.

Mr. R.'s stepdaughter, R.R., testified to numerous sexual acts perpetrated against her by Mr. R. They began when she was about five years old.[16] R.R. testified that from about the age of five to the age of twelve, Mr. R. regularly forced her to masturbate him at night.[17] During this same period, he would also rub and lick R.R.'s genital area. R.R. testified that, in 2009, on the evening of her twelfth birthday, Mr. R. attempted to have sexual intercourse with her for the first time, but her vaginal area was too small. For several weeks afterwards, Mr. R. would regularly insert one of his fingers into R.R.'s vagina. After several weeks of doing this, Mr. R. again forced himself on R.R. and was able to penetrate her and have sexual intercourse. R.R. testified that Mr. R. would have sexual intercourse with her once or twice every two months. Also, he would insert his finger inside of her on a nightly basis when he was at home.[18] As a result of the sexual conduct with R.R., the jury convicted Mr. R. of four counts of incest, six counts of sexual abuse by a parent, four counts of sexual abuse in the first degree, and three counts of sexual assault in the second degree.

---

[16]Mr. R. adopted R.R. around this time and later adopted her two brothers.

[17]As discussed later in this opinion, much of the abuse during this period occurred when Mr. R. and his family lived in another county.

[18]The record is not clear as to the type of work Mr. R. did, but it appears he sometimes worked away from home.

Following these convictions, the circuit court sentenced Mr. R. to a term of not less than 125 years nor more than 295 years in prison.[19]

## II.

## DISCUSSION[20]

On appeal, Mr. R. sets forth several assignments of error. Each issue will be discussed individually.

### A. *Motion for Mistrial Due to Opening Remarks by the Prosecutor*

The first issue raised by Mr. R. is that the trial court should have granted his motion for mistrial as a result of certain remarks made by the prosecutor during the State's opening statement.[21] Our review of a circuit court's decision to deny a motion for a mistrial is reviewed under an abuse of discretion standard. *See State v. Meadows*, 231 W. Va. 10, ___, 743 S.E.2d 318, 328 (2013). As we explained in *State v. Williams*, 172 W. Va. 295, 304, 305 S.E.2d 251, 260 (1983), "[a] trial court is empowered to exercise this discretion only when there is a 'manifest necessity' for discharging the jury before it has rendered its verdict." *See* W. Va. Code § 62–3–7 (1923) (Repl. Vol. 2010) ("[I]n any criminal case the

---

[19]*See supra* note 1.

[20]We dispense with our normal custom of setting forth a general section on the standard of review. Each of the issues presented in this case has its own unique review standard, which will be explained in the pertinent portions of the opinion.

[21]Mr. R. made two motions for mistrial on this issue.

court may discharge the jury, when it appears . . . that there is manifest necessity for such discharge."). We held in Syllabus point 3 of *State v. Little*, 120 W. Va. 213, 197 S.E. 626 (1938), that

> [t]he power of a court in a criminal case to discharge a jury without rendering a verdict is discretionary; but the power "is a delicate and highly important trust" and must be exercised soundly, else the discharge will become in effect an acquittal of the accused under the Constitution, Article 3, Section 5, which inhibits second jeopardy.

*See also Williams*, 172 W. Va. at 304, 305 S.E.2d at 260 ("This power of the trial court must be exercised wisely; absent the existence of manifest necessity, a trial court's discharge of the jury without rendering a verdict has the effect of an acquittal of the accused and gives rise to a plea of double jeopardy."). This Court also has made unequivocally clear that "[a] judgment of conviction will not be reversed because of improper remarks by a prosecuting attorney in his opening statement to a jury which do not clearly prejudice the accused or result in manifest injustice." Syl. pt.1, *State v. Dunn*, 162 W. Va. 63, 246 S.E.2d 245 (1978). *See State v. Mann*, 205 W.Va. 303, 313, 518 S.E.2d 60, 70 (1999) ("We find no prejudice or manifest injustice arising from the State's remarks.").

Mr. R. complains about the following remarks made by the prosecutor during the State's opening statement:

> As things move on, you may start to hear testimony, if they decide to present it. Mr. White already indicated to you that his client was going to testify. There may be other

8

witnesses that will come in and tell you they think the Defendant is a great guy. They know him and they're shocked he would ever do something like this. They just wouldn't be able to believe it.

During that, and when you hear those things, remember back to what you're going to hear over the first part of the presentation of the evidence from the State. Remember the voices of the alleged victims. Remember what they were telling you. Remember that, if you hear testimony about the character of Mr. R., that that's a side that he gave to the public; that's a side that he would give to his friends and his family. Certainly he's not going to present a side in which he shows himself to be someone who might molest children at his home. So remember the voices of those victims during a time period that you're hearing any positive things; that this would not be the side that Mr. R. is going to present to those other people that might be here.

Mr. R. contends that the comments prejudiced him because (1) he did not actually call any character witnesses during the trial; (2) the comments made it appear that he had an affirmative duty to put forth evidence and created a presumption against himself; (3) the comments suggested he had a bad character; and (4) the trial court failed to instruct the jury to disregard the comments.

The State argues that this Court should reject this assignment of error for several reasons. First, the State contends that the opening statement issue was not properly preserved because Mr. R. did not make a contemporaneous objection at trial. Second, Mr.

R. failed to request a curative instruction. Third, the comments did not prejudice Mr. R. We agree with the State.[22]

The law in West Virginia has long been that "[i]f either the prosecutor or defense counsel believes the other has made improper remarks to the jury, a timely objection should be made coupled with a request to the court to instruct the jury to disregard the remarks ." Syl. pt. 5, in part, *State v. Grubbs*, 178 W. Va. 811, 364 S.E.2d 824 (1987). *Accord State v. Copen*, 211 W. Va. 501, 506, 566 S.E.2d 638, 643 (2002). This Court also has long held that "[f]ailure to make timely and proper objection to remarks of counsel made in the presence of the jury, during the trial of a case, constitutes a waiver of the right to raise the question thereafter either in the trial court or in the appellate court." Syl. pt. 6, *Yuncke v. Welker*, 128 W. Va. 299, 36 S.E.2d 410 (1945). *Accord State v. Davis*, 205 W. Va. 569, 586, 519 S.E.2d 852, 869 (1999).

The record clearly shows that Mr. R. did not make a contemporaneous objection to the comments by the prosecutor. Mr. R. waited until after his opening statement

---

[22]Even though we find no merit to this first assignment of error, we will note that, as a practical matter, prosecutors should avoid commenting upon expected evidence by a defendant during their opening statements. *See* W. Va. Tr. Ct . R. 42.04(a) ("At the commencement of trial in a criminal action, the State and the defendant may make non-argumentative opening statements as to their theories of the case and the manner in which they expect to offer their evidence."). Such comments do nothing more than raise potential grounds for error. A criminal defendant is not obligated to put on any evidence.

10

was given to raise an objection. Further, at no time did Mr. R. make a request for an instruction to the jury regarding the comments. Because of our well-settled legal principles on this matter, we deem this issue waived for appellate review purposes. *See State v. Davis*, 205 W. Va. 569, 586, 519 S.E.2d 852, 869 (1999) (finding defendant could not raise issue on appeal that the prosecutor made improper remarks during State's opening statement); *State v. Young*, 185 W. Va. 327, 349 n.25, 406 S.E.2d 758, 780 n.25 (1991) (finding defendant waived issue of improper remarks by the prosecutor during closing argument because of failure to properly object).

Assuming, for the sake of argument, that Mr. R. had properly reserved this issue for appeal, we find that no prejudice resulted from the comments. Although we believe that the prosecutor should not have made comments about Mr. R.'s anticipated evidence, the comments have not been shown to prejudice Mr. R. First, during the trial court's opening remarks to the jury, the court expressly stated the attorneys would be making opening statements and that "what the lawyers say is not evidence." Second, the prosecutor clearly informed the jury that Mr. R. might not put on evidence of his good character. Third, the comments did not attack Mr. R.'s character. The comments merely asked the jury to keep in mind the type of person the victims would describe to them. Fourth, the prosecutor had a good faith belief that Mr. R. would call character witnesses because Mr. R. informed the

11

court that he had subpoenaed over thirty witnesses.[23]  Finally, "[i]t cannot be said that [Mr. R.] would have been acquitted by any impartial jury if the remarks complained of had not been made." *State v. Coulter*, 169 W. Va. 526, 530, 288 S.E.2d 819, 821 (1982).[24]  *See State v. Hottinger*, 194 W. Va. 716, 461 S.E.2d 462 (1995) (finding no prejudice from prosecutor's comments about evidence that was not subsequently introduced at trial).

### B.  Failing to Conduct a Hearing Before Admitting Rule 404(b) Evidence

The next issue raised by Mr. R. is that the trial court failed to conduct a proper hearing before admitting "other bad acts" evidence under Rule 404(b) of the West Virginia Rules of Evidence.  Specifically, Mr. R. contends that the trial court did not conduct a proper Rule 404(b) hearing before admitting evidence that he sent pornographic text messages[25] to a seventeen-year-old girl, C.G. who is not one of the victims named herein.  Mr. R. also contends that this evidence was introduced to show a lustful disposition.

"[W]e review the trial court's decision to admit evidence pursuant to Rule 404(b) under an abuse of discretion standard."  *State v. McGinnis*, 193 W. Va.147, 159, 455

---

[23]Mr. R. ultimately did not call any character witnesses.

[24]Mr. R. mentioned in passing that the prejudice from the comments was compounded by evidence that he engaged in physical and verbal abuse, including reference to spanking with a paddle.  Insofar as we have determined that the prosecutor's comments were not prejudicial, no "compounding" of prejudice occurred from such evidence.

[25]The text messages involved sexually explicit images.

S.E.2d 516, 528 (1994).  The general framework for admitting evidence under Rule 404(b)

has been set out as follows:

> Where an offer of evidence is made under Rule 404(b) of the West Virginia Rules of Evidence, the trial court, pursuant to Rule 104(a) of the West Virginia Rules of Evidence, is to determine its admissibility. Before admitting the evidence, the trial court should conduct an in camera hearing as stated in *State v. Dolin*, 176 W. Va. 688, 347 S.E.2d 208 (1986).  After hearing the evidence and arguments of counsel, the trial court must be satisfied by a preponderance of the evidence that the acts or conduct occurred and that the defendant committed the acts. If the trial court does not find by a preponderance of the evidence that the acts or conduct was committed or that the defendant was the actor, the evidence should be excluded under Rule 404(b). If a sufficient showing has been made, the trial court must then determine the relevancy of the evidence under Rules 401 and 402 of the West Virginia Rules of Evidence and conduct the balancing required under Rule 403 of the West Virginia Rules of Evidence.  If the trial court is then satisfied that the Rule 404(b) evidence is admissible, it should instruct the jury on the limited purpose for which such evidence has been admitted. A limiting instruction should be given at the time the evidence is offered, and we recommend that it be repeated in the trial court's general charge to the jury at the conclusion of the evidence.

Syl. pt. 2, *McGinnis*, 193 W. Va. 147, 455 S.E.2d 516.  Additionally this Court has held the

following regarding the admission of evidence of lustful disposition pursuant to Rule 404(b):

> Collateral acts or crimes may be introduced in cases involving child sexual assault or sexual abuse victims to show the perpetrator had a lustful disposition towards the victim, a lustful disposition towards children generally, or a lustful disposition to specific other children provided such evidence relates to incidents reasonably close in time to the incident(s) giving rise to the indictment. To the extent that this conflicts

with our decision in *State v. Dolin*, 176 W. Va. 688, 347 S.E.2d
208 (1986), it is overruled.

Syl. pt. 2, *Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

Assuming that the pornographic text messages were Rule 404(b) evidence,[26]

we find that the trial court did not fully comply with the requirements of *McGinnis* and

*Edward Charles L.* As a result of such failure, Mr. R. contends that our recent decision in

*State v. Jonathan B.*, 230 W. Va. 229, 737 S.E.2d 257 (2012), requires reversal of his

convictions. We disagree.

To begin, in *Jonathan B.*, the defendant was convicted of sexual assault, incest

and other crimes. One of the issues raised on appeal was that the trial court committed error

in admitting evidence of pornographic file names obtained from his computer. This Court

agreed with the defendant after finding the trial court failed to properly comply with

*McGinnis* and *Edward Charles L.* The opinion addressed the matter as follows:

> The record provided to the Court and the statements of
> counsel during oral argument indicate that a proper *McGinnis*
> hearing, in which the circuit court conducts an evaluation of the
> evidence pursuant to syllabus point 2 of *McGinnis*, never took
> place with regard to the pornographic file names. The circuit
> court did perform an examination of the evidence during the

---

[26]The State argues that the evidence was intrinsic and, therefore, that its
admission did not have to comply with Rule 404(b). Because of our disposition of the issue,
we need not decide whether the evidence was in fact intrinsic to the offenses in this case.

14

November 10, 2010, pretrial hearing, but this review of the evidence did not satisfy the requirements of *McGinnis*. The hearing was not in camera, the discussion of the pornographic file names in this hearing was pursuant to Jonathan B.'s motion to exclude the evidence, the court did not describe whether its findings were by a preponderance of the evidence, and the court did not give a limiting instruction regarding the evidence when it was first presented to the jury during trial. Perhaps the most problematic omission of the circuit court, however, was its failure to consider or discuss the requirement of *Edward Charles L.* that admissible Rule 404(b) evidence be close in time to the incident giving rise to the indictment.

Because we find that the circuit court's failure to hold a *McGinnis* hearing has rendered it unable to fully consider all of the evidentiary requirements of *McGinnis* and *Edward Charles L.* with regard to the pornographic file names, we conclude that the circuit court abused its discretion by allowing said evidence to be admitted at trial. We also find that because of the highly prejudicial nature of this particular evidence, especially in this case where the State's case rests solely on the claims of the alleged victim, the error is reversible.

*Jonathan B.*, 230 W. Va. at 238, 737 S.E.2d at 266.

In the instant proceeding, the record reveals that the issue of admitting evidence of pornographic text messages arose in the context of the trial court addressing numerous pretrial issues. Defense counsel characterized C.G.'s expected testimony about the pornographic text messages as Rule 404(b) evidence. Initially, defense counsel objected to C.G. any mention of the text messages because he had not seen them.[27] Defense counsel

_____

[27]It appears that the text messages were not retained by anyone who received
(continued...)

15

appears to have dropped this objection after he was reminded that a police report contained a description of the contents of the text messages. Defense counsel then argued that he did not want C.G. to testify that Mr. R. also sent the text messages to her sister, S.G. and his stepson, J.R.[28] The trial court thereafter ruled that it would allow C.G. to testify that she received pornographic text messages from Mr. R. "to show intent" and to show "lustful disposition towards children and to corroborate their statements."

Other than provide a basis for admitting the evidence through C.G., the trial court made no express *McGinnis* ruling that a preponderance of the evidence showed that the conduct occurred and that Mr. R. committed the acts. There also was no finding that the probative value of the evidence outweighed its prejudicial effects. The trial court also failed to discuss the requirement of *Edward Charles L.* that the evidence be close in time to the incident giving rise to the indictment.[29]

---

[27](...continued)
the text messages.

[28]Defense counsel stated expressly:

I want . . . .S.G. to be able to say that and I want J.R. to be able to say that. I don't want her to say and he also sent it to J.R. and he also sent it to S.G.

[29]The trial court did provide a limiting instruction.

16

Even though the trial court's *McGinnis* hearing was inadequate, we find the error to be harmless. This Court has indicated that the test for harmless error is as follows:

> Where improper evidence of a nonconstitutional nature is introduced by the State in a criminal trial, the test to determine if the error is harmless is: (1) the inadmissible evidence must be removed from the State's case and a determination made as to whether the remaining evidence is sufficient to convince impartial minds of the defendant's guilt beyond a reasonable doubt; (2) if the remaining evidence is found to be insufficient, the error is not harmless; (3) if the remaining evidence is sufficient to support the conviction, an analysis must then be made to determine whether the error had any prejudicial effect on the jury.

Syl. pt. 2, *State v. Atkins*, 163 W. Va. 502, 261 S.E.2d 55 (1979). We find harmless error for several reasons. First, in this appeal and at the trial level, Mr. R. objected only to C.G. testifying about receiving pornographic text messages from him. This same evidence, however, was introduced without objection through two other witnesses, J.R. and S.G.[30] Insofar as other witnesses testified to receiving pornographic text messages from Mr. R., the trial court's failure to hold a proper *McGinnis* hearing before allowing C.G. to testify to the issue is of no consequence. *See State v. Morris*, 227 W. Va. 76, 81 n.5, 705 S.E.2d 583, 588 n.5 (2010) ("[T]he admission of such evidence would have been harmless error because, as explained more fully below, the same fact was testified to and proven by other witnesses, including phlebotomist Bennett and Appellant's wife.").

---

[30]Additionally, Child Protective Services worker Roann Welch testified for the State that S.G. told her that Mr. R. texted her pornography.

We also find that allowing C.G. to testify about receiving the pornographic text messages was harmless in light of other testimony she was allowed to present. During her testimony C.G. also testified that Mr. R. fondled her breasts and rubbed her genital area one evening when she stayed at his home. C.G. testified that she objected to this conduct. We find it very doubtful that the jury would focus upon testimony by C.G. concerning text messages, in light of her more relevant substantive testimony concerning an alleged sexual assault.

Finally, we note that one of our concerns with the flawed *McGinnis* hearing in *Jonathan B.* was the fact that the State's case rested solely on the claims of the alleged victim. In this case, Mr. R.'s wife testified to seeing him have sex with one of the victims. Mrs. R. also testified generally that Mr. R. would pull the "girls'" shirts off and pull down their pants. Moreover, Mr. R.'s stepson testified that Mr. R. forced him to have sex with one of the victims. Further, this case involved four victims with similar evidence of grooming by Mr. R. for his sexual advances. In other words, the evidence in this case was sufficient to convict Mr. R. without the testimony from C.G. that Mr. R. sent her pornographic text messages. In the final analysis, any error in admitting testimony by C.G. that Mr. R. sent her pornographic text messages had no prejudicial impact and was harmless beyond a reasonable doubt.

18

## C. *Discovery of Mental Health Records*

Mr. R. next assigns error to the trial court's denial of his motion to discover J.D.'s mental health records that were kept by an Ohio institution called Fox Run Center for Children and Adolescents.[31] The State argued below and in this appeal that the records are confidential,[32] and that Mr. R. failed to satisfy the requirements for obtaining the records. We have held that "[s]ubject to certain exceptions, pretrial discovery in a criminal case is within the sound discretion of the trial court." Syl. pt. 8, *State v. Audia*, 171 W. Va. 568, 301 S.E.2d 199 (1983). Therefore, we must determine whether the trial court abused its discretion by refusing to allow Mr. R. to obtain J.D.'s mental health records from Fox Run. *See State v. Lassiter*, 177 W. Va. 499, 506, 354 S.E.2d 595, 602 (1987) ("In the absence of an abuse of discretion, the denial of a pre-trial discovery request does not constitute reversible error.").

We begin by noting that "Rule 16(a)(1)(D) of the West Virginia Rules of Criminal Procedure allows discovery of all results or reports of physical or mental examinations which are material to the defense or are to be used as evidence in the prosecution's case-in-chief." Syl. pt. 1, *State v. Roy*, 194 W. Va. 276, 460 S.E.2d 277

---

[31]J.D. was at the facility for about a year prior to the trial.

[32]The State's brief cites to W. Va. Code § 49-7-1 (confidentiality of children's records maintained by agencies) and W. Va. Code § 27-3-1 (confidentiality of mental health records).

(1995). Under the decision in *Roy,* a trial court is required to hold an in camera inspection of confidential records before disclosing them. However, before an in camera hearing is held, *Roy* requires the defendant to make a prima facie showing of relevancy and a legitimate need for the records. *Roy* set out the prima facie standard as follows:

> Before any in camera inspection of statutorily protected communications can be justified, a defendant must show both relevancy and a legitimate need for access to the communications. This preliminary showing is not met by bald and unilluminating allegations that the protected communications could be relevant or that the very circumstances of the communications indicate they are likely to be relevant or material to the case. Similarly, an assertion that inspection of the communications is needed only for a possible attack on credibility is also rejected. On the other hand, if a defendant can establish by credible evidence that the protected communications are likely to be useful to his defense, the trial judge should review the communications in camera.

Syl. pt. 3, *Roy, id.*

Mr. R. contends that when J.D. attended the Romney School for the Deaf and Blind, she made four false allegations: she was pregnant, she had sex during the lunch hour, she missed her period, and that a male student pulled her into the bathroom.[33] Mr. R. argued below and in this appeal that because J.D. made false allegations "at the Romney School, there is certainly a good faith belief that J.D. made false reports at Fox Run." The circuit

---

[33]The trial court permitted Mr. R. to cross-examine J.D. regarding the alleged false allegations at the Romney School.

20

court rejected this argument as a "bald and unilluminating" basis for reviewing confidential mental health records. We agree.

The threshold showing under *Roy* for an in camera inspection of confidential records is not satisfied by Mr. R. merely stating that he wants to see confidential records because the victim may have lied about something–anything-while at Fox Run. This basis for discovering the records falls squarely under *Roy's* prohibition of holding an in camera inspection merely to see if evidence exists for the defendant to attack the witness' credibility. The decision in *Roy* indicated that, during an in camera inspection, "the trial judge should look for evidence such as a witness's motive to lie against the defendant and for such information that might indicate misidentification or the inability to identify or describe the assailant." *Roy*, 194 W. Va. at 285, 460 S.E.2d at 286. In the instant case, Mr. R.'s sexual assault of J.D. was witnessed by his wife; consequently, J.D. could have told a thousand lies while at Fox Run, and it would not have been relevant to the issue of his sexual assault of her.

### D. Limiting Cross-Examination of Two Witnesses

The next assignment of error by Mr. R. involves two separate issues. First, Mr. R. contends that the trial court committed error in limiting his cross-examination of A.M. Second, Mr. R. argues that it was error for the trial court to limit his cross-examination of a

21

forensic nurse, Debbie Wolford. Before addressing each issue separately, we will set out a few legal principles to guide our review.

We have held that "[t]he extent of the cross-examination of a witness is a matter within the sound discretion of the trial court; and in the exercise of such discretion, in excluding or permitting questions on cross-examination, its action is not reviewable except in the case of manifest abuse or injustice." Syl. pt. 4, *State v. Carduff*, 142 W. Va. 18, 93 S.E.2d 502 (1956). We also are guided in our analysis by the principle that "[a] defendant on trial has the right to be accorded a full and fair opportunity to fully examine and cross-examine the witnesses." Syl. pt. 1, *State v. Crockett*, 164 W. Va. 435, 265 S.E.2d 268 (1979). Of course, this right is not unbridled and is subject to general rules, as we have previously defined as follows:

> Several basic rules exist as to cross-examination of a witness. The first is that the scope of cross-examination is co-extensive with, and limited by, the material evidence given on direct examination. The second is that a witness may also be cross-examined about matters affecting his credibility. The term "credibility" includes the interest and bias of the witness, inconsistent statements made by the witness and to a certain extent the witness' character. The third rule is that the trial judge has discretion as to the extent of cross-examination.

Syl. pt. 4, *State v. Richey*, 171 W. Va. 342, 298 S.E.2d 879 (1982).

22

**1. Cross-examination of A.M**. Prior to trial, Mr. R. learned that A.M. allegedly once told her aunt, that a boy inappropriately touched her breasts at a dance. During a pretrial hearing, the aunt was questioned about the incident and stated that A.M. reported that a boy inappropriately touched her breasts.[34] The aunt also testified that she did not believe A.M. and that she reported the matter to the boy's parents. It appears that school officials learned of the incident and confronted A.M. and the boy about the matter. A.M. and the boy are reported to have stated that the incident did not occur.

At the conclusion of the aunt's pretrial testimony, Mr. R. moved the trial court to permit him to cross-examine A.M. about the incident during the trial. Mr. R. argued that this was a false allegation A.M. made and that he should be allowed to use it to attack her credibility. The trial court denied the motion after applying the factors set out in *State v. Quinn*, 200 W. Va. 432, 490 S.E.2d 34 (1997).

In *Quinn*, this Court noted that evidence that a victim of a sexual offense has made statements about being the victim of sexual misconduct by someone other than the

_____

[34]The aunt also testified that A.M. informed her about a second incident when another boy inappropriately touched her while she was babysitting him. Mr. R. did not raise any issue to the circuit court nor in this appeal about allegations concerning the second incident.

defendant is generally prohibited,[35] "unless the defendant establishes . . . that there is a strong probability that the alleged victim's other statements are false." *Quinn*, 200 W. Va. at 438, 490 S.E.2d at 40. In Syllabus points 3 and 4 of *Quinn*, we set forth the procedure a defendant must follow in order to show that a sexual assault victim's other statements about being the victim of sexual misconduct are false:

> 3. A defendant who wishes to cross-examine an alleged victim of a sexual offense about or otherwise introduce evidence about other statements that the alleged victim has made about being the victim of sexual misconduct must initially present evidence regarding the statements to the court out of the presence of the jury and with fair notice to the prosecution, which presentation may in the court's discretion be limited to proffer, affidavit, or other method that properly protects both the rights of the defendant and the alleged victim and effectuates the purpose of our rape shield law, W. Va. Code, 61-8B-11 [1986] and West Virginia Rules of Evidence 404(a)(3) [1994].

> 4. If the trial court finds that there is a strong probability that the alleged victim of a sexual offense has made other statements which are false of being the victim of sexual misconduct, evidence relating to those statements may be considered by the court outside of the scope of our rape shield law, W. Va. Code, 61-8B-11 [1986] and West Virginia Rules of Evidence 404(a)(3) [1994].

*Quinn*, 200 W. Va. 432, 490 S.E.2d 34.

---

[35]This prohibition is found under our rape shield statute, W. Va. Code § 61-8B-11 (1986) (Repl. Vol. 2010), and Rule 404(a)(3) of the West Virginia Rules of Evidence.

Mr. R. used the testimony of the aunt to try and establish that A.M. made a false allegation that she was a victim of sexual misconduct by another person. The trial court found that this evidence did not meet the "strong probability" requirement of *Quinn*. This decision was reached in part because of the representations from the State that A.M. informed school officials that she never made the allegation to the aunt and that the conduct never occurred. The trial court also was concerned that there was no evidence that A.M. reported this alleged inappropriate conduct to a government or law enforcement official. After reviewing the testimony of the aunt, we do not believe the trial court abused its discretion in prohibiting Mr. R. from cross-examining A.M. about this matter. Although we are not able to assess the aunt's demeanor, as did the trial court, her testimony revealed a person who is estranged from A.M. and her family. In this Court's view, it is the veracity of the aunt that is doubtful regarding this matter, not A.M.[36]

**2. Cross-examination of Debbie Wolford.** Mr. R. also has argued that the trial court committed error in not allowing him to cross-examine Debbie Wolford about prior sexual abuse of R.R. when she was five years old. Ms. Wolford was a forensic nurse who examined R.R. and at least two of the other victims. Ms. Wolford testified that R.R.'s vaginal "injuries were pretty remarkable for someone who was twelve." Ms. Wolford also

---

[36]Even if we had determined that the trial court erred in not allowing Mr. R. to cross-examine A.M. on this issue, such error would have been harmless beyond a reasonable doubt.

testified that she could not tell when the vaginal injuries occurred.  Mr. R. contends that the

injuries Ms. Wolford described could have been caused by someone else.  Therefore, he

argues that he should have been allowed to question Ms. Wolford about that possibility.

It appears that the trial court denied Mr. R.'s argument for cross-examining Ms.

Wolford about prior sexual abuse of R.R. under our rape shield law.  This Court has held that

> [t]he test used to determine whether a trial court's
> exclusion of proffered evidence under our rape shield law
> violated a defendant's due process right to a fair trial is (1)
> whether that testimony was relevant; (2) whether the probative
> value of the evidence outweighed its prejudicial effect; and (3)
> whether the State's compelling interests in excluding the
> evidence outweighed the defendant's right to present relevant
> evidence supportive of his or her defense. Under this test, we
> will reverse a trial court's ruling only if there has been a clear
> abuse of discretion.

Syl. pt. 6, *State v. Guthrie*, 205 W. Va. 326, 518 S.E.2d 83 (1999).

We find that the trial court did not abuse its discretion in prohibiting Mr. R.

from cross-examining Ms. Wolford about R.R. being sexually abused by someone else when

she was five years old because such evidence was not relevant.[37]  Mr. R. contends

---

[37]Although we are addressing this issue on the merits as presented, we wish to
point out that Mr. R. has inadequately briefed this issue.  It was previously pointed out that
R.R. testified during the trial that Mr. R. began sexually abusing her when she was five years
old.  This abuse did not result in sexual penetration until R.R. turned twelve years old. As
discussed later, several of the charges against Mr. R. that involved R.R. were dismissed
(continued...)

26

specifically that the damage to R.R.'s hymen that Ms. Wolford described could have occurred when she was sexually abused at five years old. The State points out that the medical records relied upon by Mr. R. to suggest prior sexual abuse at age five stated clearly that there was no trauma. The description of R.R.'s hymen by Ms. Wolford was consistent with extreme trauma. Therefore, no relevant connection exists between showing that R.R.'s outer vaginal area may have been sexually fondled, at best, by someone else when she was five years old, and the evidence that Mr. R. penetrated her vagina repeatedly after she turned twelve years old.

### E. Amending the Indictment

The final issue raised by Mr. R. is that the trial court committed error when it allowed the State to nolle prosequi or drop several of the counts in the indictment.[38] We have long held that a prosecutor cannot dismiss criminal charges without the prior approval of the

---

[37](...continued) because the conduct occurred in another county. The record suggests that the charges actually prosecuted covered only the last three years of what was about seven years of sexual abuse by Mr. R. Mr. R. has only pointed to vague references in the record to support the allegation that he is making in this appeal, *i.e.*, that R.R. was sexually abused by someone else when she was five years old. The references pointed to by Mr. R. do not make clear that R.R. was actually abused by another person when she was five years old. We have merely assumed, for the sake of argument, that part of the record not submitted on appeal would support the assertion being made that R.R. was the victim of sexual abuse by someone else when she was five years old.

[38]Mr. R. does not state how many counts were dismissed. A review of the record shows that the State moved the court to dismiss fifteen counts of the indictment. However, a total of twenty-one counts did not go to the jury.

court.  *See* Syl. pt.1, *Denham v. Robinson*, 72 W. Va. 243, 77 S.E. 970 (1913) ("The entry of a nolle prosequi by the prosecuting attorney, though the attorney general joins therein, without the consent of the court, is ineffective to discontinue a prosecution upon an indictment by a grand jury.").[39]  This principle of law is now embodied in Rule 48(a) of the West Virginia Rules of Criminal Procedure.  Under that rule, "[t]he attorney for the state may by leave of court file a dismissal of an indictment, information or complaint, and the prosecution shall thereupon terminate."  Syl. pt. 1, in part, *State v. McWilliams*, 177 W. Va. 369, 352 S.E.2d 120 (1986).  Our review of a trial court's decision to grant the State's motion to drop some or all criminal charges is for an abuse of discretion. *Myers v. Frazier*, 173 W. Va. 658, 676, 319 S.E.2d 782, 801 (1984).

We have recognized that the prosecutor must guide the trial court in its decision whether to consent to charges being dropped by providing the court with reasons for the prosecutor's recommendation that charges be dropped.  In *State ex rel. Skinner v. Dostert*, 166 W. Va. 743, 278 S.E.2d 624 (1981), we recognized that

> [T]he prosecutor has a duty to support his action with reviewable reasons and since the court entertaining the motion to dismiss is entitled to have all of the relevant facts of the case before it rules on the motion, the prosecutor must have a

---

[39]*See also* W. Va. Code § 62-2-25 (1923) (Repl. Vol. 2010) ("If any prosecuting attorney shall compromise or suppress any indictment or presentment without the consent of the court entered of record, he shall be deemed guilty of malfeasance in office, and may be removed therefrom in the mode prescribed by law.").

> knowledge of all the circumstances surrounding the case before he can legitimately move for a nolle prosequi.

*Skinner*, 166 W. Va. at 753, 278 S.E.2d at 632. *See Myers*, 173 W. Va. at 668, 319 S.E.2d at 793 ("[s]pecific reasons must be given by the prosecutor for the dismissal so that the trial court judge can competently decide whether to consent to the dismissal." (citations omitted)). The decision in *Myers* also held "that as a general rule, a trial court should not grant a motion to dismiss criminal charges unless the dismissal is consonant with the public interest in the fair administration of justice." *Myers*, 173 W. Va. at 669, 319 S.E.2d at 793.

A few days before the start of the trial in this case, the State moved to dismiss several of counts of the indictment involving R.R. because it had learned that venue was not proper for those charges. The State informed the court that while preparing some of the witnesses for trial, it learned that some of the offenses against R.R. occurred at a time when Mr. R. and his family lived in another county. Mr. R. opposed the dismissal on the grounds that he would be prejudiced because he would have to renumber his trial notebook. Mr. R. also contends that he lost evidence as a result of dropping some of the charges because he was unable to say that he was not living in the county when the dismissed offenses occurred.

We have recognized "that venue lies only in the county where the crime was committed and at no other place, unless the defendant waives his right or files a motion for a change of venue." *Willis v. O'Brien*, 151 W. Va. 628, 631, 153 S.E.2d 178, 180 (1967).

*See* W. Va. Const. art. III, § 14. In this proceeding, the trial court asked Mr. R. if he would waive venue on the improper counts, and he unequivocally indicated that he would not waive venue. The trial court thereafter granted the State's motion to drop the counts. Our law is clear. Absent a waiver by Mr. R., the State simply could not have prosecuted him for conduct committed in another county.[40] Therefore, the trial court did not abuse its discretion in granting the State's motion.

## III.

## CONCLUSION

The circuit court's order of May 24, 2012, sentencing Mr. R. to imprisonment is affirmed.

Affirmed.

---

[40]It will be noted that Mr. R. mentioned in one sentence of his brief that "the Court permitted the State to amend the alleged date in count 19 from August 2009, to February, 2010." The State did not respond to this passing comment in Mr. R.'s brief. To the extent Mr. R. intended this fleeting comment to be an assignment of error, it is inadequate for review. *See State v. LaRock*, 196 W. Va. 294, 302, 470 S.E.2d 613, 621 (1996) ("Although we liberally construe briefs in determining issues presented for review, issues which are not raised, and those mentioned only in passing but [which] are not supported with pertinent authority, are not considered on appeal.").