# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**State of West Virginia,**
**Plaintiff Below, Respondent**

**vs)  No. 15-0210** (Monroe County 14-M-01)

**Lindsey M. Preston,**
**Defendant Below, Petitioner**

**FILED**

November 23, 2015

RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Lindsey Mack Preston, by counsel Joseph Aucremanne and John C. Anderson II, appeals the Circuit Court of Monroe County's February 9, 2014, order fining him $100 for failure to yield one-half portion of a paved roadway and sentencing him to concurrent terms of incarceration of six months for driving while license revoked for driving under the influence, one year for obstructing an officer, and one year for leaving the scene of an accident resulting in bodily injury. The State of West Virginia, by counsel Nic Dalton, filed a response in support of the circuit court's order. On appeal, petitioner argues that (1) the circuit court erred by permitting the State to introduce rebuttal evidence from an undisclosed witness solely to impeach the credibility of a witness for petitioner; (2) the circuit court erred by permitting the State to elicit rebuttal hearsay evidence, which was not disclosed to petitioner prior to trial, from a witness for petitioner during petitioner's case-in-chief; (3) the State withheld material evidence that prejudiced petitioner, in violation of *Brady v. Maryland*, 373 U.S. 83 (1963); and (4) the State made improper remarks during its closing argument on the credibility of a witness for petitioner.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the order of the circuit court is appropriate under Rule 21 of the Rules of Appellate Procedure.

On October 13, 2013, petitioner was arrested in Monroe County, West Virginia. Following proceedings in the Magistrate Court of Monroe County, the magistrate court granted petitioner's motion to transfer the case to the Circuit Court of Monroe County, West Virginia, for trial. Thereafter, the State filed a misdemeanor information charging petitioner with six crimes related to the October 13, 2013, incident: (1) driving with license revoked for driving under the influence ("DUI") DUI, in violation of West Virginia Code § 17B-4-3(b); (2) obstructing an officer, in violation of West Virginia Code § 61-5-17(a); (3) driving left of center, in violation of West Virginia Code § 17C-7-6; (4) reckless driving, in violation of West Virginia Code § 17C-5-3(a); (5) failure to yield one-half of a paved roadway, in violation of West Virginia Code § 17C-

1

7-2(a); and (6) leaving the scene of an accident resulting in bodily injury, in violation of West Virginia Code § 17C-4-1(a).

In November of 2014, petitioner's two-day jury trial commenced. At trial, jurors heard evidence that on October 13, 2013, a 2011 Hyunda Sonata, owned by petitioner's mother, collided with a Honda CRV, owned by Tammy and Frank Pence ("Pences"). The Pences testified that when they noticed the on-coming Sonata, they pulled as far as possible to the side of the paved, one-lane road, but they were restrained by a steep drop-off on their side of the roadway. When the vehicles collided, the Pences' vehicle was forced over the hillside drop-off and into trees and brush on the steep embankment. During the crash, airbags deployed in both the Pences' vehicle and the Sonata, but only the Sonata's driver's side airbag deployed, not its passenger side airbag. The Pences could not identify the Sonata's driver. However, the Pences' son, who was also in their vehicle at the time of the wreck, testified that he saw only one person in the oncoming Sonata.

The State presented testimony from four individuals who arrived at the scene shortly after the wreck occurred. Meghan O'Day testified that, to her knowledge, she and her family were the first to arrive. Her brother, Sonny O'Day, explained that when they arrived, he saw only the wrecked Sonata, and no other vehicles. When he discovered that the Pences' vehicle had gone over the embankment, he immediately descended that embankment to check on them. According to Mr. O'Day, he arrived so soon after the wreck occurred that dust from the deployed airbags still floated inside the Pences' vehicle.

Frank and Heidi Houck similarly testified that they arrived on scene very soon after the wreck occurred. Ms. Houck told the jury that she permitted petitioner to use her cellular telephone to contact his mother. After speaking with his mother, petitioner asked Ms. Houck for a ride to a nearby house, and she acquiesced. Ms. Houck drove petitioner to the nearby house where he exited her vehicle, entered the house, and returned to Ms. Houck's vehicle with Brandon Ballard. Ms. Houck then drove petitioner and Mr. Ballard back to the scene of the wreck. Several witnesses testified that petitioner was on scene when they arrived and that he had blood on his face, but Mr. Ballard was not on scene when they arrived and had no apparent injuries.

The investigating officer testified that, during his investigation, Mr. Ballard claimed to have driven the Sonata with petitioner riding in the passenger seat. The officer said that he witnessed blood on the Sonata's driver's side airbag, driver's side floor, and just outside the driver's side door. However, no blood was found in the Sonata's passenger's side area. He also informed the jury that petitioner's driver's license was revoked for DUI at the time of the wreck.

The State also presented the testimony of Clay Hunter, who resided with Mr. Ballard at the time of the wreck. Mr. Hunter testified that petitioner came to Mr. Ballard's home immediately after the wreck and asked Mr. Ballard to tell the police he drove the Sonata. He further said that he got into a vehicle to attempt to find the wreck site, but was stopped by a local resident who complained that Mr. Hunter was driving too aggressively. At the time of giving his testimony, Mr. Hunter had been charged with an unrelated crime, but he stated that he had made no deals with the State in exchange for his testimony.

2

Petitioner testified on his own behalf, and he presented several witnesses, including his mother and Mr. Ballard. Petitioner and several of his witnesses claimed that Mr. Ballard drove the Sonata and that petitioner rode in the Sonata's passenger seat. Mr. Ballard stated that he dropped a lit cigarette in the vehicle as he drove, and, while reacting to the dropped cigarette, he crashed into the Pence's vehicle. He then claimed to have left the scene to seek help before anyone else arrived. According to petitioner's witnesses, Mr. Hunter was not at Mr. Ballard's house on the day of the wreck.

Petitioner also presented the testimony of the director of the Monroe County 911 call center to discuss the timing of certain calls made to 911. In its rebuttal, the State asked the 911 director about a call made to the 911 center on the day of the wreck concerning an aggressive driver. The 911 director confirmed that a call was made to the 911 center reporting an aggressive driver in the area of the wreck.

The State also called a rebuttal witness who claimed to have seen petitioner's mother at a store on the day of the wreck, which contradicted her testimony that she remained at her house that day. Petitioner objected to this witness on the grounds of (1) hearsay as to the specific time of petitioner's mother's visit to the store without an original receipt of a transaction and (2) surprise as to any records from the store regarding petitioner's mother's visit. The Court overruled petitioner on both grounds. In its closing argument, the State pointed out this inconsistency between petitioner's mother's testimony and its rebuttal witness.

Following its deliberations, the jury convicted petitioner of (1) driving on a license revoked for DUI; (2) obstructing an officer; (3) failure to yield one-half of a paved roadway; and (4) leaving the scene of an accident resulting in bodily injury. The jury acquitted petitioner of driving left of center and reckless driving.

In February of 2015, the circuit court held a sentencing hearing. Despite petitioner's argument for alternative sentencing, the circuit court sentenced petitioner to concurrent terms of incarceration of six months for driving with license revoked for DUI; one year for obstructing an officer; and one year for leaving the scene of an accident resulting in bodily injury. For the conviction for failure to yield one-half of a paved roadway, the circuit court imposed a fine of $100. The circuit court further ordered his sentences in this matter to run concurrently with a ten-year term of incarceration for an unrelated first-degree robbery conviction. This appeal followed.

On appeal, we decline to address petitioner's first, second, and fourth assignments of error. In his first and fourth assignments of error, we find that petitioner failed to properly preserve the issues for appellate review. His first assignment of error is that the circuit court erred by permitting the State to use extrinsic evidence to impeach the credibility of his mother's testimony. While petitioner notes that this issue, if error, may be harmless, he asserts that the State violated our holding in *State v. Ramey*, 158 W.Va. 541, 212 S.E.2d 737 (1975) and Rule 608(b) of the West Virginia Rules of Evidence. Petitioner's fourth assignment of error is that the prosecutor made remarks during his closing argument that demonstrated his personal opinion as to the credibility of petitioner's mother as a witness. However, both assignments of error were neither objected to at trial nor otherwise raised before the circuit court.

3

We have held that "[e]rrors assigned for the first time on appeal will not be regarded in any matter of which the trial court had jurisdiction or which might have been remedied in the trial court had objection been raised there." *State v. Dennis*, 216 W.Va. 331, 350, 607 S.E.2d 437, 456 (2004). S*ee also Honaker v. Mahon*, 210 W. Va. 53, 60, 552 S.E.2d 788, 795 (2001) (stating that "the general rule that a party's failure to object waives any right to appeal an issue."); *State v. Flanders*, 218 W. Va. 208, 214, 624 S.E.2d 555, 561 (2005) (stating that "[w]here objections were not shown to have been made in the trial court, and the matters concerned were not jurisdictional in character, such objections will not be considered on appeal." (internal quotations and citation omitted)); *State v. LaRock*, 196 W.Va. 294, 316, 470 S.E.2d 613, 635 (1996) (stating that "the law ministers to the vigilant, not to those who sleep on their rights . . . . When a litigant deems himself or herself aggrieved by what he or she considers to be an important occurrence in the course of a trial or an erroneous ruling by a trial court, he or she ordinarily must object then and there or forfeit any right to complain at a later time.").

It is equally clear in our case law that

> [t]o preserve an issue for appellate review, a party must articulate it with such sufficient distinctiveness to alert a circuit court to the nature of the claimed defect. The rule in West Virginia is that parties must speak clearly in the circuit court, on pain that, if they forget their lines, they will likely be bound forever to hold their peace. The forfeiture rule . . . fosters worthwhile systemic ends and courts will be the losers if we permit the rule to be easily evaded. It must be emphasized that the contours for appeal are shaped at the circuit court level by setting forth with particularity and at the appropriate time the legal ground upon which the parties intend to rely.

*State ex rel. Cooper v. Caperton*, 196 W. Va. 208, 216, 470 S.E .2d 162, 170 (1996) (citation omitted). With specific regard to petitioner's fourth assignment of error, we have held that

2. "If either the prosecutor or defense counsel believes the other has made improper remarks to the jury, a timely objection should be made coupled with a request to the court to instruct the jury to disregard the remarks." Syllabus point 5, in part, State v. Grubbs, 178 W.Va. 811, 364 S.E.2d 824 (1987).

3. "Failure to make timely and proper objection to remarks of counsel made in the presence of the jury, during the trial of a case, constitutes a waiver of the right to raise the question thereafter either in the trial court or in the appellate court." Syllabus point 6, Yuncke v. Welker, 128 W.Va. 299, 36 S.E.2d 410 (1945).

Syl. Pts. 2 and 3, State v. Scott, 233 W.Va. 12, 754 S.E.2d 588 (2014). Petitioner failed to object to the use of extrinsic evidence at trial or the prosecutor's remarks during closing arguments. Without objections on these grounds, we decline to address them.

Petitioner's second assignment of error is that the circuit court erred in permitting the State to elicit rebuttal hearsay evidence from a witness for petitioner during his case-in-chief. He

further alleges that such hearsay evidence was not disclosed to him prior to trial. However, petitioner fails to cite any legal authority to support his assertions. This Court has previously stated that "issues . . . mentioned only in passing but [ ] not supported with pertinent authority, are not considered on appeal." *State v. LaRock*, 196 W. Va. 294, 302, 470 S.E.2d 613, 621 (1996) (citations omitted). Further, Rule 10(c)(7) of the West Virginia Rules of Appellate Procedure requires that petitioner's brief "must contain an argument exhibiting clearly the points of fact and law presented, the standard of review applicable, and citing the authorities relied on[.]" It is an appellant's burden to show the error in judgment of which he complains. Syl. Pt. 2, *W. Va. Dep't. of Health & Hum. Res. Emps. Fed. Credit Union v. Tennant*, 215 W.Va. 387, 599 S.E.2d 810 (2004). Having cited no authority in support of his claim of error, we also decline to address this issue on appeal.

Petitioner's only viable contention on appeal is that the State violated *Brady v. Maryland*, 373 U.S. 83 (1963), and its progeny, when it failed to provide him with evidence of the 911 call concerning an aggressive driver in the area of the wreck on the day in question. Petitioner maintains that the State used that evidence at trial to bolster Mr. Hunter's testimony. Mr. Hunter testified that he was at Mr. Ballard's house, overheard Mr. Ballard conspire to lie to the police for petitioner, and was stopped by a local resident for driving aggressively while trying to find the wreck site. Petitioner argues that evidence of the 911 call about an aggressive driver in the area bolsters that testimony. While petitioner argues that the State had a duty to disclose evidence of the 911 call, he does not indicate how the 911 call falls under *Brady*'s holding regarding the disclosure of exculpatory or impeachment evidence. The 911 call at issue was neither exculpatory for petitioner nor impeachment evidence for any of the State's witnesses.

Moreover, petitioner attacked the credibility of Mr. Hunter's story on cross-examination and through his own witnesses. As we have explained, the concepts of "bolstering," "impeachment," and "rehabilitation" relate to the credibility of a witness in the following ways:

> [b]olstering occurs when a party seeks to enhance a witness's credibility before it has been attacked . . . . Bolstering is generally disallowed. Impeachment occurs anytime a witness's credibility is attacked, and it may be accomplished in several different ways including, inter alia, the following: a witnes"'s character trait for untruthfulness pursuant to W.Va. R. Evid. 608(a); prior convictions pursuant to W.Va. R. Evid. 609(a); instances of misconduct not resulting in a conviction pursuant to W.Va. R. Evid. 608(b); and prior inconsistent statements pursuant to W.Va. R. Evid. 613 . . . . Rehabilitation, which occurs after a witness's credibility has been attacked . . . . Credibility issues concerning a witness may be addressed by questioning that witness or through the testimony of another witness.

*State v. Wood*, 194 W.Va. 525, 531, 460 S.E.2d 771, 777 (1995) (citing *United States v. Toro*, 37 M.J. 313, 315 (C.M.A.1993)).

In this case, the State's use of evidence of the 911 call was clearly an attempt to rehabilitate Mr. Hunter's credibility, which petitioner admits in his brief to this Court he had "vigorously attacked[.]" Therefore, under the circumstances of this case, we find no error in the

State's failure to disclose material that was neither exculpatory nor impeachment evidence or in its use of that evidence at petitioner's trial.

For the foregoing reasons, the circuit court's February 9, 2014, order is hereby affirmed.

Affirmed.

**ISSUED:  November 23, 2015**

**CONCURRED IN BY:**

Chief Justice Margaret L. Workman
Justice Robin Jean Davis
Justice Brent D. Benjamin
Justice Menis E. Ketchum
Justice Allen H. Loughry II