511 S.E.2d 488

STATE of West Virginia, Plaintiff Below, Appellee,

v.

Dana Adam COTTRILL, Defendant Below, Appellant.

No. 25203.

Supreme Court of Appeals of West Virginia.

Submitted Nov. 10, 1998.

Decided Dec. 11, 1998.

Carl P. Bryant, Bryant & White, St. Marys, West Virginia, Attorney for the Appellant.

Darrell V. McGraw, Jr., Attorney General, Scott E. Johnson, Senior Assistant Attorney General, Charleston, West Virginia, Attorneys for the Appellee.

PER CURIAM:

The defendant below and appellant herein, Dana Adam Cottrill [hereinafter "Cottrill"], appeals his August, 1997, Wood County jury convictions of automobile breaking and entering, grand larceny, and conspiracy to commit grand larceny. He also appeals the consecutive sentences he received in October, 1997, for each of these charges: twelve months' confinement in the Wood County Jail for automobile breaking and entering, one to ten years' confinement in the West Virginia State Penitentiary for grand larceny, and one to ten years' confinement in the West Virginia State Penitentiary for conspiracy to commit grand larceny. In addition, Cottrill appeals the ruling of the Circuit Court of Wood County holding him in civil contempt and sentencing him indefinitely to confinement in the Wood County Jail for his refusal to disclose the whereabouts of the stolen property.

Following a review of the parties' arguments on appeal, the appellate record submitted to this Court, and the pertinent authorities, we reverse that portion of the circuit court's order sentencing Defendant Cottrill to a term of imprisonment for conspiracy to commit grand larceny in excess of the maximum sentence for this offense authorized by W. Va.Code § 61–10–31 (1971) (Repl.Vol.1997). Accordingly, we remand this case to the Circuit Court of Wood County for imposition of sentence for Cottrill's conviction of conspiracy commensurate with the punishment permitted by W. Va.Code § 61–10–31. In addition, we affirm, as factually and legally proper, the defendant's convictions for automobile breaking and entering, grand larceny, and conspiracy to commit grand larceny; his sentences for automobile breaking and entering and grand larceny; and the circuit court's contempt ruling and accompanying indefinite sentence.

1. Mr. Shackleford estimated the value of the

## I.

## FACTUAL BACKGROUND

The evidence presented during the jury trial of this case discloses the following facts. Alan Shackleford, a part-time disc jockey, testified that, on the evening of February 2, 1997, his pickup truck was parked in front of his Parkersburg home. He stated that he kept equipment used in his disc jockey job in his truck, including approximately 500 compact disks, three compact disk players, lights, a fog machine, and assorted hardware and wiring.

Janet Vaughn, a neighbor of Mr. Shackleford, testified that she was awakened by a loud noise at approximately 2:00 a.m. on February 3, 1997. Upon arising and looking outside, Ms. Vaughn saw two individuals putting items in the trunk of a white car, which was parked in front of Ms. Vaughn's home. She observed the two persons twice leave the car, run away, and return with more objects which they placed in the white car's trunk. She continued to watch as the two individuals retrieved small objects from the ground and placed things in the trunk and backseat of the white car. Jeffrey Graham, Ms. Vaughn's fiance, also witnessed the two persons' repeated movements of running, toward the Shackleford residence, and returning to the white car to place items in the car's trunk and backseat. Mr. Graham testified that he observed the persons' motions to be "quick and sneaky," and not indicative of an ordinary move of personal belongings. He additionally noticed that they seemed to be "in a hurry." An approaching car illuminated the white car and the two individuals who were standing nearby enabling Ms. Vaughn and Mr. Graham to see the driver's face. They later identified the driver as Cottrill.

Around 5:00 a.m., February 3, Mr. Shackleford discovered the passenger side window of his truck had been broken and that all of his disc jockey equipment, including his compact disk collection and other belongings, was missing.[1] Mr. Shackleford called the police to report the break-in of his truck. In addition to the damage to Mr. Shackleford's truck, responding officers located a compact

property taken from his truck exceeded $8,000.

disk, belonging to Shackleford, lying on the ground near where the white car earlier had been parked. Cottrill subsequently was arrested with regard to this crime. On May 21, 1997, a Wood County grand jury returned an indictment charging Cottrill with automobile breaking and entering,[2] grand larceny,[3] and conspiracy to commit grand larceny[4].

Thereafter, on August 25–26, 1997, a jury trial was had concerning the three charges for which Cottrill had been indicted. The jury found Cottrill guilty of all three charged offenses. Subsequently, on October 1, 1997,[5] the circuit court sentenced Cottrill to twelve months in the county jail for automobile breaking and entering; one to ten years in the state penitentiary for grand larceny; and one to ten years in the state penitentiary for conspiracy to commit grand larceny, with each of the sentences to run consecutively to one another.[6]

During the October 1, 1997, hearing, the circuit court also asked Cottrill to identify the location of the property stolen from Mr. Shackleford's vehicle. Cottrill refused to answer, indicating that he wished to assert his Fifth Amendment privilege against self-incrimination.[7] The assistant prosecuting attorney stated that any information provided by Cottrill would not be used if he would be granted a new trial on appeal, and the circuit court granted Cottrill immunity in this regard. Cottrill continued in his refusal to testify, and the circuit court held him in civil contempt of court. Defendant Cottrill then stated that he "didn't take" the property in question. The circuit court deemed Cottrill's statement to be unresponsive to the court's inquiry and sentenced him to an indefinite term of confinement in the county jail to end when Cottrill supplied the requested information. The circuit court also determined

2. W. Va.Code § 61–3–12 (1923) (Repl.Vol.1997) defines the crime of breaking and entering an automobile as follows:

[I]f any person shall, at any time, break and enter, or shall enter without breaking, any automobile, motorcar or bus, with like intent [to commit a felony or any larceny], within the jurisdiction of any county in this State, he shall be guilty of a misdemeanor, and, upon conviction, shall be confined in the county jail not less than two nor more than twelve months and be fined not exceeding one hundred dollars.

3. The elements of grand larceny and the penalty therefor are contained in W. Va.Code § 61–3–13(a) (1994) (Repl.Vol.1997):

If a person commits simple larceny of goods or chattels of the value of one thousand dollars or more, such person is guilty of a felony, designated grand larceny, and, upon conviction thereof, shall be imprisoned in the penitentiary not less than one nor more than ten years, or, in the discretion of the court, be confined in jail not more than one year and shall be fined not more than two thousand five hundred dollars.

4. W. Va.Code § 61–10–31 (1971) (Repl.Vol.1997) describes the crime of conspiracy, in relevant part, as:

It shall be unlawful for two or more persons to conspire (1) to commit any offense against the State ... if ... one or more of such persons does any act to effect the object of the conspiracy.
It shall not be a defense to any prosecution under this section thirty-one that the conduct charged or proven is also a crime under any

other provision or provisions of this Code or the common law.
Any person who violates the provisions of this section by conspiring to commit an offense against the State which is a felony ... shall be guilty of a felony, and, upon conviction thereof, shall be punished by imprisonment in the penitentiary for not less than one nor more than five years or by a fine of not more than ten thousand dollars, or, in the discretion of the court, by both such imprisonment and fine....

5. The October 1, 1997, sentencing order was modified by an amended sentencing order entered March 20, 1998. The subsequent order retains the sentences imposed in the first order, but changes the manner in which such sentences are to be served by requiring the defendant to complete his consecutive penitentiary incarcerations before serving his twelve-month county jail confinement.

6. The circuit court indicated that Cottrill's sentences also should run consecutively to his earlier sentences for grand larceny (Wood County conviction) and breaking and entering (Jackson County conviction). In addition to his sentences of imprisonment, Cottrill was ordered to pay to Mr. Shackleford $8,650 as reimbursement for his losses.

7. The Fifth Amendment to the United States Constitution provides, in relevant part, that "[n]o person ... shall be compelled in any criminal case to be a witness against himself ...." The corresponding provision of the West Virginia Constitution states, "nor shall any person, in any criminal case, be compelled to be a witness against himself ...." W. Va. Const. art. III, § 5.

that Cottrill's contempt confinement was independent of his three criminal convictions and that such imprisonment would not be considered as credit toward his sentences for automobile breaking and entering, grand larceny, and conspiracy to commit grand larceny.

On November 20, 1997, the circuit court held a hearing on Cottrill's motion for reconsideration of the contempt ruling and sentence, and denied said motion explaining its reasoning for finding Defendant Cottrill in contempt as follows:

> I will tell you the attitude of the Court is that the Defendant did not answer the question. He was not being truthful when he simply said, "I didn't take it." He had already been convicted of taking it. I know he took it. The evidence against him was irrefutable. That was the basis on which the question was asked.
>
> .     .     .     .     .
>
> I don't know what he thought would happen, but when I did say, "You are committed to jail for contempt on that," he said, "I didn't take it."
>
> I considered that disingenuous and not an answer to my question, and I still insist upon him telling me what he did, who he gave it to, or who he sold it to.... I don't care where the property is. I want to know who bought it from him. And failing that, he is in contempt of court for refusing to answer my question.
>
> [O]f course, contempt is something that he can purge himself [sic] simply by answering a question truthfully. In other words, he has got the key to the jail cell in his mouth. It is a civil contempt. And he can be held until such time as he decides to purge himself.[8]

(Footnote added).

Defendant Cottrill now appeals to this Court his three jury convictions, the sentences imposed therefor, and his contempt of court citation and its resulting indefinite sentence.

## II.

## STANDARD OF REVIEW

■ From the errors alleged by Defendant Cottrill, it appears three general standards of review govern our decision of this appeal. First, the defendant contends that the circuit court incorrectly interpreted and applied the criminal law and procedure governing the underlying jury trial, sentencing, and contempt proceedings. To ascertain the correctness of the circuit court's legal rulings in the proceedings below, we necessarily must resolve questions of law. "Where the issue on an appeal from the circuit court is clearly a question of law or involving an interpretation of a statute, we apply a *de novo* standard of review." Syl. pt. 1, *Chrystal R.M. v. Charlie A.L.*, 194 W.Va. 138, 459 S.E.2d 415 (1995). *See also* Syl. pt. 2, in part, *Walker v. West Virginia Ethics Comm'n*, 201 W.Va. 108, 492 S.E.2d 167 (1997) ("Questions of law are subject to a *de novo* review.").

■ The defendant also raises questions as to the factual sufficiency of the evidence upon which his convictions for automobile breaking and entering, grand larceny, and conspiracy to commit grand larceny were based. Traditionally, jury verdicts are viewed with high esteem and accorded great deference in light of the jury's invaluable role as finder of fact. " 'The jury is the trier of the facts and in performing that duty it is the sole judge as to the weight of the evidence and the credibility of the witnesses.' Point 2, Syllabus, *State v. Bailey*, 151 W.Va. 796[, 155 S.E.2d 850 (1967) ]." Syl. pt. 3, *State v. Knotts*, 156 W.Va. 748, 197 S.E.2d 93 (1973). Therefore, "[a] reviewing court should not reverse a criminal case on the facts which have been passed upon by the jury, unless the court can say that there is reasonable doubt of guilt and that the verdict must have been the result of misapprehension, or passion and prejudice." Syl. pt. 3, *State v. Sprigg*, 103 W.Va. 404, 137 S.E. 746 (1927). *See also* Syl. pt. 5, *State v. Shaffer*, 138 W.Va. 197, 75 S.E.2d 217 (1953) ("Where the evi-

8. See *infra* note 13 describing circuit court's cancellation of Defendant Cottrill's indefinite in-

carceration for civil contempt.

dence presents issues of fact for jury determination and the jury has been fully and correctly instructed as to the law applicable to the case, its verdict is conclusive and will not be disturbed, there being otherwise no prejudicial error.").

■ Lastly, Defendant Cottrill asserts that the circuit court improperly applied the law of contempt when it compelled him to testify, held him in civil contempt when he refused to so testify, and sentenced him indefinitely to confinement in the county jail for his allegedly contemptuous behavior.

In reviewing the findings of fact and conclusions of law of a circuit court supporting a civil contempt order, we apply a three-pronged standard of review. We review the contempt order under an abuse of discretion standard; the underlying factual findings are reviewed under a clearly erroneous standard; and questions of law and statutory interpretations are subject to a *de novo* review.

Syl. pt. 1, *Carter v. Carter,* 196 W.Va. 239, 470 S.E.2d 193 (1996). With these standards in mind, we proceed to evaluate the defendant's assignments of error.

## III.

## DISCUSSION

On appeal to this Court, Defendant Cottrill first complains that the circuit court sentenced him to a greater term of imprisonment for conspiracy to commit grand larceny than that authorized by the governing statute, W. Va.Code § 61–10–31 (1971) (Repl.Vol. 1997). He also raises numerous issues regarding the factual and legal validity of his convictions and resultant sentences. Finally, Defendant Cottrill challenges the circuit court's authority to hold him in civil contempt and to sentence him indefinitely therefor.

9. While the defendant's prior convictions of grand larceny and breaking and entering could have permitted the circuit court to sentence him in accordance with the penalty enhancement provisions of the recidivist statute, *see* W. Va. Code § 61–11–18 (1994) (Repl.Vol.1997), the requisite procedure was not followed in this case.

### A. Sentence in Excess of Statutorily Permissible Punishment for Conspiracy to Commit Grand Larceny

■ Defendant Cottrill first argues that the circuit court erred by sentencing him to one to ten years' imprisonment in the West Virginia State Penitentiary for his conviction of conspiracy to commit grand larceny because the statute authorizing punishment for conspiracy permits only "imprisonment in the penitentiary for not less than one nor more than *five* years." W. Va.Code § 61–10–31 (1971) (Repl.Vol.1997) (emphasis added by Defendant Cottrill). The State concedes that the circuit court did impose an unlawful sentence and that the defendant should be re-sentenced commensurate with the statutory guidelines.

■ Upon a review of the underlying sentencing proceedings, we discern no explanation, from either the sentencing order or the sentencing hearing transcript, for the circuit court's decision to sentence the defendant in excess of the statutory maximum penalty.[9] In the absence of any evidence to the contrary, we can reach no other conclusion but that the sentence imposed by the circuit court for the defendant's conviction of conspiracy to commit grand larceny impermissibly deviated from the statutorily authorized penalty for this crime. *See* W. Va.Code § 61–10–31.

"The general rule supported by the weight of authority is that a judgment rendered by a court in a criminal case must conform strictly to the statute which prescribes the punishment to be imposed and that any variation from its provisions, either in the character or the extent of the punishment inflicted, renders the judgment absolutely void." Point 3, Syllabus, *State ex rel. Nicholson v. Boles,* 148 W.Va. 229[, 134 S.E.2d 576 (1964) ].

Syl. pt. 1, *State ex rel. Boner v. Boles,* 148 W.Va. 802, 137 S.E.2d 418 (1964), *overruled*

*See* W. Va.Code § 61–11–19 (1943) (Repl.Vol. 1997) (describing procedures for application of enhanced penalties for habitual criminals); Syl. pt. 9, *State v. Crabtree,* 198 W.Va. 620, 482 S.E.2d 605 (1996) (further clarifying statutory guidelines for sentencing of repeat criminal offenders).

*on other grounds by State v. Eden,* 163 W.Va. 370, 256 S.E.2d 868 (1979).

When a sentence imposed in a criminal case is void, either because of lack of jurisdiction or because it was not warranted by statute for the particular offense, the court may set aside such void sentence and pronounce a valid sentence even though the execution of the void sentence has commenced, and without regard to the time when, or the term within which, such void sentence was imposed.

Syl. pt. 6, *State ex rel. Boner v. Boles. See also* Syl. pt. 4, *id.* ("A sentence at variance with statutory requirements is void and may be superseded by a new sentence in conformity with statutory provisions, and such new sentence may be rendered after such prior sentence has been partially served or after the term of court has expired even though such new sentence imposes a greater punishment."). Consistent with our prior precedent, we reverse that portion of the circuit court's sentencing order imposing upon the defendant an indeterminate sentence of one to ten years' incarceration in the West Virginia State Penitentiary for his conviction of conspiracy to commit grand larceny, because such sentence exceeds the maximum punishment for this offense authorized by W. Va. Code § 61–10–31 (1971) (Repl.Vol.1997). We further remand this case to the Circuit Court of Wood County for imposition of sentence for Cottrill's conviction of conspiracy commensurate with the punishment permitted by W. Va.Code § 61–10–31.

### B. Factual Sufficiency and Legal Correctness of Convictions and Remaining Sentences

Defendant Cottrill also raises numerous other assignments of error pertaining to his jury convictions and resultant sentences. Specifically, he complains that the factual evidence was insufficient to support his convictions and claims that numerous legal errors tainted the validity of his jury convictions and resultant sentences. Having reviewed these arguments, the applicable authorities, and the relevant portions of

the appellate record, we find the evidence supporting the defendant's convictions to have been factually sufficient and the underlying proceedings culminating in these convictions and sentences to have been legally correct. Therefore, we affirm the remainder of the circuit court's order upholding Cottrill's jury convictions of automobile breaking and entering, grand larceny, and conspiracy to commit grand larceny and imposing sentences for automobile breaking and entering and grand larceny.

### C. Civil Contempt

■ Defendant Cottrill lastly complains that the circuit court erroneously adjudicated him to be in civil contempt and sentenced him indefinitely for this transgression. Specifically, he argues that the circuit court lacked the authority to compel him to testify about a crime of which he had been convicted and from which he intended to appeal. Consequently, the defendant urges that because the circuit court was not authorized to compel his testimony, it impermissibly held him in contempt for refusing to divulge the requested, and arguably incriminating, information and it improperly sentenced him indefinitely to the Wood County Jail until he agreed to testify. The State disputes Defendant Cottrill's contentions and maintains that the circuit court acted properly in compelling the defendant to testify as to the location of Mr. Shackleford's stolen property, in holding him in contempt, and in sentencing him therefor when he refused to supply the requested information.

■ Succinctly stated, the defendant's chief complaint is that he should have been permitted to assert his privilege against self-incrimination [10] in response to the court's questioning. Notwithstanding the constitutional magnitude of the privilege Defendant Cottrill claims, the resolution of his contention turns upon a single statutory provision contained in the law of this State. W. Va. Code § 57–5–2 (1923) (Repl.Vol.1997) provides:

---

**10.** The constitutional privilege against self-incrimination is set forth in the Fifth Amendment to the United States Constitution and in Section 5, of Article III, of the West Virginia Constitution. See *supra* note 7 for the text of these constitutional provisions.

In any criminal proceeding no person shall be excused from testifying or from producing documentary or other evidence upon the ground that such testimony or evidence may criminate or tend to criminate him, if the court in which he is examined is of the opinion that the ends of justice may be promoted by compelling such testimony or evidence. And if, but for this section, the person would have been excused from so testifying or from producing such evidence, then if the person is so compelled to testify or produce other evidence and if such testimony or evidence is self-criminating, such self-criminating testimony or evidence shall not be used or receivable in evidence against him in any proceeding against him thereafter taking place other than a prosecution for perjury in the giving of such evidence, and the person so compelled to testify or furnish evidence shall not be prosecuted for the offense in regard to which he is so compelled to testify or furnish evidence, and he shall have complete legal immunity in regard thereto.

By its terms, W. Va.Code § 57–5–2 circumvents an individual's ability to claim the privilege against self-incrimination in response to questioning in a criminal proceeding by granting a blanket immunity from prosecution with regard to the subject of the compelled testimony. In evaluating this statutory language, we have held that

> Code, 57–5–2, is comprehensive in its terms, both in divesting a witness, who is compelled to give self-criminating testimony or produce evidence which will criminate him, of the privilege of refusing to so testify or produce such evidence, which the witness has under Article V (Fifth Amend-

ment) of the Constitution of the United States, and Section 5, Article III of the Constitution of West Virginia that "No person . . . shall be compelled in any criminal case to be a witness against himself . . .", and in providing, *inter alia,* that a person so compelled to testify or to furnish such evidence shall not be prosecuted for the offense in regard to which he is so compelled to testify or furnish evidence, and in clothing such involuntary witness with complete immunity in regard to such compelled self-criminating evidence.

Syl. pt. 3, *State v. Abdella,* 139 W.Va. 428, 82 S.E.2d 913 (1954). Stated otherwise, "W. Va.Code § 57–5–2 (1966) confers upon a witness compelled to testify over his claim of self-incrimination a complete immunity that precludes subsequent criminal prosecution for the offense to which his testimony relates." Syl. pt. 1, *State ex rel. Brown v. MacQueen,* 169 W.Va. 56, 285 S.E.2d 486 (1981).

From the facts of the case *sub judice,* it is apparent that, during the course of a "criminal proceeding," [11] the circuit court sought to compel Defendant Cottrill's testimony regarding the location of the property taken from Mr. Shackleford's truck. Prior to compelling the defendant to provide this information, the circuit court granted him immunity, with respect to the information he was requested to provide, to prevent the use of such testimony in any new trial that may result from the defendant's appeal of his convictions to this Court. Given the plain language of W. Va.Code § 57–5–2 and our precedents upholding its validity, we conclude that the circuit court did not err by

**11.** Frequently, a sentencing hearing, or the sentencing phase of a criminal prosecution, is included within the general penumbra of "criminal proceedings". *See, e.g.,* W. Va.Code § 53–4A–7(c) (1967) (Repl.Vol.1994) (suggesting sentencing is part of "criminal proceedings"); Syl. pt. 2, *State v. Lawson,* 165 W.Va. 119, 267 S.E.2d 438 (1980) (recognizing imposition of sentence as component of "a criminal proceeding"); *Housden v. Leverette,* 161 W.Va. 324, 325, 241 S.E.2d 810, 811 (1978) (noting sentence was imposed during "habitual criminal proceeding"); *State ex rel. Johnson v. McKenzie,* 159 W.Va. 795, 796–97 n. 1, 226 S.E.2d 721, 722–23 n. 1 (1976) (acknowledging that sentencing court has " 'jurisdiction of the criminal proceeding' " (quoting *State ex rel. Bradley v. Johnson,* 152 W.Va. 655, 661, 166 S.E.2d 137, 141 (1969), *overruled on other grounds by State v. Eden,* 163 W.Va. 370, 256 S.E.2d 868 (1979))); Syl. pt. 1, *State ex rel. Bullett v. Boles,* 149 W.Va. 700, 143 S.E.2d 133 (1965) (remarking that sentencing occurred during "a criminal proceeding"); *State ex rel. Robison v. Boles,* 149 W.Va. 516, 518, 142 S.E.2d 55, 57 (1965) (same).

compelling Defendant Cottrill to testify as to the whereabouts of the stolen property.[12]

Having concluded that the circuit court complied with the governing statutory law in compelling the defendant's testimony, we next must determine whether the circuit court properly adjudged him to be in civil contempt for refusing to answer the court's inquiry and whether the court permissibly sentenced the defendant to indefinite incarceration in the county jail for such contempt. In this regard, we have cautioned that "[w]hen [a] [c]ourt acts within its jurisdiction, its orders shall be promptly obeyed, or contempt is a proper sanction." Syl. pt. 1, in part, *United Mine Workers of Am. v. Faerber*, 179 W.Va. 73, 365 S.E.2d 353 (1986). During the underlying proceedings, the circuit court held Cottrill in contempt for refusing to respond to the court's questioning and specifically designated such contempt as being civil in nature.

The appropriate sanction in a civil contempt case is an order that incarcerates a contemner for an indefinite term and that also specifies a reasonable manner in which the contempt may be purged thereby securing the immediate release of the contemner, or an order requiring the payment of a fine in the nature of compensation or damages to the party aggrieved by the failure of the contemner to comply with the order.

Syl. pt. 3, *State ex rel. Robinson v. Michael*, 166 W.Va. 660, 276 S.E.2d 812 (1981). Moreover, "[i]n a contempt proceeding, whenever the defendant may effect his release from jail

by performing such act or acts as the court directs, the contempt is civil in nature . . . ." Syl. pt. 9, in part, *Eastern Assoc. Coal Corp. v. Doe*, 159 W.Va. 200, 220 S.E.2d 672 (1975).

The appellate record of the underlying proceedings indicates that, after the circuit court granted Defendant Cottrill immunity, he persisted in his refusal to testify. The court then found the defendant to be in civil contempt and sentenced him indefinitely until he "truthfully answers the Court's inquiries." In this regard, the defendant had "the key to the jail cell in his mouth," in that he could "effect his release from jail by performing such act . . . as the court directs . . . ," Syl. pt. 9, in part, *Doe*. Accordingly, we find no error with the circuit court's civil contempt adjudication and imposition of an indefinite sentence therefor.[13]

## IV.

## CONCLUSION

For the foregoing reasons, we reverse that portion of the circuit court's October 1, 1997, order, and March 20, 1998, amended order, sentencing the defendant in excess of the statutory maximum for conspiracy to commit grand larceny and remand this case to the Circuit Court of Wood County for imposition of sentence for conspiracy to commit grand larceny consistent with the punishment authorized by W. Va.Code § 61–10–31 (1971) (Repl.Vol.1997). We affirm the remainder of the circuit court's sentencing orders upholding the defendant's jury convictions and imposing sentences for automobile breaking

12. At least one legal commentator has discussed whether a criminal defendant who has been convicted of a crime, but who has not yet been sentenced therefor or perfected an appeal thereof, could be unduly prejudiced if he/she were not able to assert the privilege against self-incrimination with respect to compelled testimony about the crime of which he/she had been convicted. *See* E.R. Soeffing, Annotation, *Plea of Guilty or Conviction as Resulting in Loss of Privilege against Self–Incrimination as to Crime in Question*, 9 A.L.R.3d 990 (1966). In the factual context of the contempt proceedings underlying the instant appeal, however, we do not believe these considerations are valid concerns. First, in imposing upon Defendant Cottrill the maximum penalties permissible for the crimes of automobile breaking and entering, *see* W. Va.Code § 61–3–12 (1923) (Repl.Vol.1997), and grand larceny,

*see* W. Va.Code § 61–3–13(a) (1994) (Repl.Vol. 1997), the circuit judge specifically referred not to his recent adjudication of contempt but to his prior convictions of breaking and entering and grand larceny. Moreover, the fact that the defendant had not yet appealed his August, 1997, convictions and resultant sentences at the time his testimony was compelled and he was held in contempt is of no moment, this argument having previously been rejected by this Court. *See State v. Simon*, 132 W.Va. 322, 349, 52 S.E.2d 725, 739 (1949).

13. On May 14, 1998, the circuit court released Defendant Cottrill from his contempt incarceration determining such punishment to be "unavailing, and therefore useless as a tool to compel."

and entering and grand larceny. Finally, we affirm the circuit court's October 1, 1997, contempt ruling and resultant sentence.

Affirmed in part, Reversed in part, and Remanded.

Justice McGRAW did not participate in the decision of this case.