IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

January 2020 Term

_____

No. 18-0574
_____

FILED

May 26, 2020

released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

STATE OF WEST VIRGINIA,
Plaintiff Below, Respondent

v.

ALEX HOLDEN,
Defendant Below, Petitioner

_____

Appeal from the Circuit Court of Wood County
The Honorable J.D. Beane, Judge
Criminal No. 17-F-168

AFFIRMED
_____

Submitted: March 3, 2020
Filed: May 26, 2020

Eric K. Powell, Esq.                    Patrick Morrisey, Esq.
Powell Law Office                       Attorney General
Parkersburg, West Virginia              Julianne Wisman, Esq.
Counsel for Petitioner                  Assistant Attorney General
                                        Karen C. Villanueva-Matkovich, Esq.
                                        Assistant Attorney General
                                        Charleston, West Virginia
                                        Counsel for Respondent

JUSTICE WORKMAN delivered the Opinion of the Court.

1.  "This Court's standard of review concerning a motion to dismiss an indictment is, generally, *de novo.* However, in addition to the *de novo* standard, where the circuit court conducts an evidentiary hearing upon the motion, this Court's 'clearly erroneous' standard of review is invoked concerning the circuit court's findings of fact." Syl. Pt. 1, *State v. Grimes*, 226 W. Va. 411, 701 S.E.2d 449 (2009).

2.  "Most courts hold that as a general rule, a trial court should not grant a motion to dismiss criminal charges unless the dismissal is consonant with the public interest in the fair administration of justice." Syl. Pt. 12, in part, *Myers v. Frazier*, 173 W. Va. 658, 319 S.E.2d 782 (1984).

3.  "The right to a trial without unreasonable delay is basic in the administration of criminal justice and is guaranteed by both the State and federal constitution. U.S. Const. Amend. VI; W. Va. Const., Art. 3, § 14." Syl. Pt. 1, *State v. Foddrell,* 171 W. Va. 54, 297 S.E.2d 829 (1982).

4.  "'It is the three-term rule, *W. Va. Code,* 62-3-21 [1959], which constitutes the legislative pronouncement of our speedy trial standard under Article III, Section 14 of the West Virginia *Constitution.*' Syl.Pt. 1, *Good v. Handlan,* 176 W.Va. 145, 342 S.E.2d 111 (1986)." Syl. Pt. 2, *State v. Carrico*, 189 W. Va. 40, 42, 427 S.E.2d 474, 476 (1993).

i

5.  "Under the provisions of Code, 62-3-21, as amended, the three unexcused regular terms of court that must pass before an accused can be discharged from further prosecution are regular terms occurring subsequent to the ending of the term at which the indictment was returned. The term at which the indictment was returned can not be counted as one of the three terms."  Syl. Pt. 1, *State ex rel. Spadafore v. Fox*, 155 W. Va. 674, 186 S.E.2d 833 (1972).

**WORKMAN, Justice:**

In this appeal, defendant/petitioner Alex Holden appeals from an order of the Circuit Court of Wood County, West Virginia, granting the State's motion to dismiss the indictment against him without prejudice and denying the petitioner's motion to dismiss it with prejudice. The petitioner claims that under the facts and circumstances of the case, the justifications proffered by the State, and accepted by the court, were insufficient to establish that dismissal without prejudice was "consonant with the public interest in the fair administration of justice." Syl. Pt. 12, in part, *Myers v. Frazier*, 173 W. Va. 658, 319 S.E.2d 782 (1984).

Following careful review of the parties' briefs and oral arguments, the appendix record, and the applicable law, we affirm the decision of the circuit court.

## I. FACTS AND PROCEDURAL BACKGROUND

Our knowledge of the facts of the underlying offense is gleaned solely from two documents contained in the appendix record submitted by the parties: a sworn criminal complaint against the petitioner submitted by Patrol Officer B.D. Elliott with the Parkersburg Police Department, and a subsequent indictment against both petitioner and Holly M. Miller, handed up by a Wood County, West Virginia, grand jury.

1

On May 1, 2016, the petitioner was a passenger in a car driven by his codefendant, Holly M. Miller. Because Ms. Miller was observed to be driving while talking on her cell phone, police instituted a stop of the vehicle; thereafter, because Ms. Miller was "shaking profusely" and had trouble answering questions such as "who is the owner of this vehicle," a police dog was brought in to perform a "free air sniff." The dog gave a positive indication for the presence of drugs, and police searched the vehicle, the driver, and the petitioner. A clear plastic baggy containing fifteen individually wrapped packages of suspected heroin was found on Ms. Miller's person, and cash in the amount of $312.00 was found on the petitioner's person. The petitioner was charged in a criminal complaint on that same date.[1]

The petitioner alleges in his brief that at some unspecified time, Ms. Miller informed law enforcement authorities that the suspected heroin belonged to the petitioner, and that he had forced her to hide the drugs on her person. However, assuming that there is some statement or other documentation in the circuit court case record to support this statement, no such statement or documentation has been made a part of the appendix record for this Court's review.

---

[1] The petitioner is the only defendant charged in this criminal complaint; presumably Ms. Miller was charged in a separate complaint, but the appendix record does not contain any information on this point.

2

On May 18, 2017, more than a year later, the petitioner and Ms. Miller were named in a four-count indictment charging them with two counts of possession of a controlled substance with intent to deliver, West Virginia Code § 60A-4-401(a)(1) (2014), and two counts of conspiracy to commit said offense, West Virginia Code § 61-10-31 (2014).  The petitioner was arraigned on May 25, 2016, and entered a plea of not guilty; it is unknown when or even if Ms. Miller has been arraigned.  Trial was scheduled for September 6, 2017, and thereafter, rescheduled for November 14, 2017, on the ground that Ms. Miller was unavailable.[2]  However, on November 9, 2017, the State moved for a continuance "on the ground that Defendant Holly M. Miller is currently incarcerated in Franklin County Ohio and will be there until November 28th 2017."  This motion was granted over the petitioner's objection, with the new trial date to "be reset at the motion hearing when all parties are available."

On January 18, 2018, at the aforementioned motion hearing, with the petitioner present and Ms. Miller not present but appearing by counsel, the court rescheduled the trial for April 24, 2018.  The court also denied the petitioner's motion to sever.  *See supra* note 2.  However, on April 23, 2018, one day prior to trial, the State filed a written Motion to Dismiss the indictment, without prejudice, on the ground that "[t]he state is unable to prosecute this Defendant without testimony from his codefendant, Holly

---

[2] This information is averred in the petitioner's Motion to Sever Defendants, which was filed on or about November 13, 2017.  In its brief on appeal, the State does not contest the accuracy of the petitioner's factual representation made in the motion.

3

Miller. Ms. Miller is incarcerated in Ohio and will not be released until sometime in 2019."

At the hearing on the State's motion, the State made the following representations to the court:

> What I can say to the Court is: Obviously . . . the State is not attempting to obtain some tactical advantage over the defendant. These are co-defendants who are charged as co-conspirators. Ms. Miller is incarcerated in Ohio. She is now – the I.E.D. [sic] process has begun to bring her back here. We're not asking for this case to be put on hold until 2019. In fact, we're attempting to have her returned here so that this case can proceed to trial.

The court granted the State's motion over petitioner's objection, and denied petitioner's motion to dismiss with prejudice. This appeal followed.

## II. STANDARD OF REVIEW

This Court has held that,

> [t]his Court's standard of review concerning a motion to dismiss an indictment is, generally, *de novo*. However, in addition to the *de novo* standard, where the circuit court conducts an evidentiary hearing upon the motion, this Court's 'clearly erroneous' standard of review is invoked concerning the circuit court's findings of fact.

Syl. Pt. 1, *State v. Grimes*, 226 W. Va. 411, 701 S.E.2d 449 (2009). It is with this standard in mind that we examine the issue before us.

4

### III. DISCUSSION

At the outset, we note that the issue on appeal is not whether the trial court erred in dismissing the case against petitioner; the issue is whether, under the facts and circumstances of this case, the court erred in dismissing the case *without prejudice*. Petitioner contends that dismissal without prejudice violated the precept established in syllabus point twelve, in part, *Myer*s, that "[m]ost courts hold that as a general rule, a trial court should not grant a motion to dismiss criminal charges unless the dismissal is consonant with the public interest in the fair administration of justice." 173 W. Va. at 661, 319 S.E.2d at 785.

The facts in *Myers* were quite unusual. Two Fayette County deputy sheriffs, Deputy Dempsey and Deputy Brown, were indicted on charges of first degree sexual assault on a young woman in the bedroom of her trailer, as well as false swearing in connection with the matter; a third deputy, Deputy Pennington, although involved in the criminal offenses, was never charged; rather, he was granted immunity in return for his agreement to cooperate in the prosecution of the other two. *Id*. at 663, 319 S.E.2d at 787-88. Thereafter, the two deputies under indictment negotiated plea deals: Deputy Dempsey agreed to plead nolo contendere to one count of false swearing, in return for which all other charges would be dismissed with prejudice and he would be sentenced to a term of probation not to exceed five years; and Deputy Brown agreed not to be a city or county police officer in Fayette County for five years, in return for which all charges against him

5

were dismissed. *Id.* at 664, 319 S.E.2d at 788. The circuit court accepted the pleas, but prior to its entry of a final order, petitioner Myers, acting as "a concerned citizen and resident of Fayette County, West Virginia," filed separate petitions for writ of prohibition and mandamus in this Court. Petitioner asked the Court to prohibit the circuit court from entering a final order accepting the pleas entered by Deputy Dempsey and Deputy Brown, and to prohibit the court from entering an order accepting the grant of immunity to Deputy Pennington. Petitioner further asked this Court to issue a writ of mandamus against the prosecuting attorney, requiring him to withdraw the offer of immunity extended to Deputy Pennington and to charge him with sexual assault and false swearing. *Id.* at 663, 319 S.E.2d at 787.

On these facts, we concluded that the case should be remanded to the circuit court for a determination of whether the court's acceptance of the plea agreements, and the grant of immunity, were "consonant with the public interest in the fair administration of justice." *Id.* at 669, 319 S.E.2d at 793. We further noted that the considerations in determining whether or not to accept a plea bargain "are equally applicable to the dismissal of criminal charges under Rule 48(a)."[3] *Id.* at 669 & n.16, 319 S.E.2d at 793 & n.16. Our

---

[3] Rule 48(a) of the West Virginia Rules of Criminal Procedure provides: "*By attorney for state*. – The attorney for the state may by leave of court file a dismissal of an indictment, information or complaint, and the prosecution shall thereupon terminate. Such a dismissal may not be filed during the trial without the consent of the defendant."

discussion of this issue in *Myers* built upon our earlier pronouncement in *State ex rel. Skinner v. Dostert*, 166 W. Va. 743, 278 S.E.2d 624 (1981), that:

> [T]he prosecutor has a duty to support his action with reviewable reasons and since the court entertaining the motion to dismiss is entitled to have all of the relevant facts of the case before it rules on the motion, the prosecutor must have a knowledge of all the circumstances surrounding the case before he can legitimately move for a nolle prosequi.

*Id.* at 753, 278 S.E.2d at 632; *see also State v. Davis*, 236 W. Va. 550, 558, 782 S.E.2d 423, 431 (2015); *State v. Scott*, 233 W. Va. 12, 27, 754 S.E.2d 588, 603 (2014).

As was the situation in *Myers*, the facts in all of the cited authorities were unusual – as might well be expected when anyone other than the State is protesting the circuit court's dismissal of criminal charges. For instance, in *Skinner*, the issue before us was the validity of an administrative order issued by a circuit court judge, purporting to prohibit prosecutors from proceeding with any nolle prosequi motions in magistrate court without prior circuit court approval, and to prohibit magistrates from dismissing criminal cases on nolle prosequi motions. *Skinner*, 166 W. Va. at 746-47, 278 S.E.2d at 628. In *Davis*, the petitioner sought to prohibit the dismissal of criminal charges against her on the ground that she was being denied her right to have a preliminary hearing. *Davis*, 236 W. Va. at 553, 782 S.E.2d at 426. In *Scott*, the petitioner objected to the dismissal of some (but not all) of the charges against him because he had good defenses to those particular

7

charges,[4] and further because dismissal of the charges would require him to renumber the pages of his trial notebook. *Scott*, 233 W. Va. at 27, 754 S.E.2d at 603. In short, in all of the cited authorities, the question of whether a dismissal of criminal charges was "consonant with the public interest in the fair administration of justice" arose only in the most unusual of circumstances.

Relying solely on the bare-bones holdings of the cited cases, with no discussion or consideration of the very different facts and circumstances presented therein, the petitioner argues that there are five different factual bases on which to conclude that the case against him should have been dismissed with prejudice as a matter of law. We examine these five bases in turn.

First, the petitioner alleges that the codefendant, Ms. Miller, was not unavailable, contrary to the claim made by the State in its motion to dismiss. It is undisputed that at least as of November 9, 2017, when the State made its second motion for a continuance, the State knew where Ms. Miller was incarcerated; therefore, the petitioner argues, the State had at least five months prior to the scheduled trial to procure her presence pursuant to the Interstate Agreement on Detainers ("IAD"), West Virginia

---

[4] The charges were dismissed because the State concluded that the particular offenses had been committed in a different county – which was apparently the petitioner's anticipated defense to those charges. *Scott*, 233 W. Va. at 27, 754 S.E.2d at 603.

8

Code §§ 62-14-1 to -7 (2014). In this regard, § 62-14-1, Article IV(a), of the IAD provides

in relevant part that,

> [t]he appropriate officer of the jurisdiction in which an untried indictment, information or complaint is pending shall be entitled to have a prisoner against whom he has lodged a detainer and who is serving a term of imprisonment in any party state made available in accordance with Article V(a) hereof upon presentation of a written request for temporary custody or availability to the appropriate authorities of the state in which the prisoner is incarcerated: Provided, That the court having jurisdiction of such indictment, information or complaint shall have duly approved, recorded and transmitted the request.

Thereafter, pursuant to Article V(a) of the IAD,

> [i]n response to a request made under Article III or IV hereof, the appropriate authority in a sending state shall offer to deliver temporary custody of such prisoner to the appropriate authority in the state where such indictment, information or complaint is pending against such person in order that speedy and efficient prosecution may be had.

The record is silent as to exactly what steps the State had taken by April 23,

2018, pursuant to the IAD, apart from the assistant prosecuting attorney's representation at

the hearing held on April 24, 2018, that "Ms. Miller is incarcerated in Ohio. She is now –

*the I.E.D. [sic] process has begun to bring her back here*. We're not asking for this case to

be put on hold until 2019. In fact, we're attempting to have her returned here so that this

case can proceed to trial." (Emphasis added.) In the absence of any evidence to the

contrary, we assume that the assistant prosecutor's statement, albeit not very informative,

was truthful. *See generally State ex rel. McCamic v. McCoy*, 166 W. Va. 572, 579, 276

9

S.E.2d 534, 538 (1981) (holding that Court will not presume wrongdoing on the part of attorneys, as they "occupy a professional standing as officers of the courts. This standing demands high moral and ethical conduct and the failure to comply with these standards can lead to disciplinary action including the suspension or loss of a license."); *W. Va. State Bar v. Earley*, 144 W. Va. 504, 518–19, 109 S.E.2d 420, 430 (1959) ("Attorneys as officers of the court are in effect a part of the judicial system of the State. The customary functions of attorneys at law bear an intimate relation to the administration of justice by the courts.") (internal citations omitted). In short, this Court will not presume deceit on the part of a member of the Bar in the absence of even a shred of evidence establishing such deceit. No such evidence exists in the record of this case.

Based on our review of all the facts and circumstances presented herein, we disagree with the petitioner's claim that the State's failure to procure Ms. Miller's temporary custody under the IAD in any way implicated the public interest in the fair administration of justice. The petitioner cites no authority for the proposition that a five-month delay in securing the custody of a necessary witness for trial, standing alone,[5]

---

[5] This case does not present a speedy trial issue, *see* text *infra*, which might well affect our analysis in a case involving the State's failure to act with dispatch in securing the attendance of a witness pursuant to the IAD. *Cf. State ex rel. McCourt v. Alsop*, 220 W. Va. 644, 648, 648 S.E.2d 631, 635 (2007) (acknowledging that State's awareness of defendant's incarceration may trigger a duty to institute IAD procedures); *State ex rel. Stines v. Locke,* 159 W.Va. 292, 220 S.E.2d 443 (1975) (petitioner's speedy trial claim upheld in circumstance where the State was aware of his incarceration in Michigan but failed to pursue temporary custody of him pursuant to the IAD).

requires the draconian remedy of a dismissal with prejudice. Although we find that the State's motion to dismiss was legally ill-advised – the attendance of a witness incarcerated in the receiving state can only be effectuated pursuant to the IAD when a case is *pending* in the asking state – we find no evidence in the record to indicate that the motion was made in bad faith or for an improper purpose.

Second, the petitioner alleges that the State's motion to dismiss was based upon a "false predicate," specifically, that Ms. Miller – if and when she was returned to Wood County for trial – was available to the State as a witness. In this regard, the petitioner correctly notes that as a codefendant in his case, Ms. Miller could not be called by the State to testify absent a grant of immunity. W. Va. Const., art. III, § 5; *see also State v. Cottrill*, 204 W. Va. 77, 85, 511 S.E.2d 488, 496 (1998); *State v. Abdella*, 139 W. Va. 428, 436, 82 S.E.2d 913, 918 (1954). The petitioner states that although the State obviously hoped to enter into a plea agreement with Ms. Miller that would include an agreement on her part to testify against her codefendant, the State made no representation that there was such an agreement in place.

While we agree with the petitioner that the State was facing some practical and logistical problems in securing not only Ms. Miller's presence but also her agreement to testify, we disagree that that the State's motion to dismiss was predicated on any representation to the court, made directly or even tacitly, that a deal had been made. Rather, the motion was based on the simple fact that the State had not yet been able to complete

the IAD process to bring Ms. Miller to trial. Again, we find no evidence in the record to indicate that the State's motion was made in bad faith or for an improper purpose, notwithstanding the fact that the State's strategy for proving its case against the petitioner may ultimately prove to be based on unfounded optimism about its ability to make a deal with Ms. Miller.

Third, the petitioner alleges that the State moved to dismiss the case against him without prejudice in order to gain a tactical advantage, specifically, by gaining unlimited extra time in which to negotiate a plea agreement with Ms. Miller. As support for this argument, the petitioner cites *State v. Davis*, 236 W. Va. 550, 782 S.E.2d 423 (2015), where Ms. Davis complained that by dismissing criminal charges against her, the magistrate had deprived her of her right to a preliminary hearing. The circuit court granted mandamus relief to the petitioner, "express[ing] concern" that the State may have sought the dismissal in order to gain a tactical advantage, specifically, not having to show its evidentiary hand at a preliminary hearing while still keeping open its option to proceed with an indictment. *Id.* at 559, 782 S.E.2d at 432. This Court reversed, concluding that:

> While [improper tactical advantage] is a legitimate consideration, the solution is not to provide a preliminary hearing to a person who is no longer facing a pending criminal charge . . . . Instead, the remedy lies with the magistrate court's responsibility to ensure that the dismissal is consonant with the public interest in the fair administration of justice. If a magistrate finds that an improper motive lies behind a prosecutor's motion to dismiss, the magistrate should deny the motion

12

*Id*. (footnote omitted).

Under the facts and circumstances of this case, the petitioner's claim that the State moved to dismiss in order to gain an improper tactical advantage is wholly speculative. As noted earlier, there is no evidence before this Court as to what Ms. Miller's testimony would have been, *see* text *supra*, and thus no factual basis upon which we could conclude that the testimony was essential to the State's case against the petitioner.[6] We do note, with disapproval, that the State filed its skeletal motion[7] only one day in advance of the scheduled trial, and then sent an assistant prosecuting attorney to argue the motion who knew little or nothing about the case and had not even seen the motion. This may be a sufficient basis for this Court to conclude that the State's handling of this matter was slipshod, at best; however, the record before us is insufficient to establish that the State was guilty of bad faith maneuvering in order to gain a tactical advantage.

---

[6] Although the petitioner claims that Ms. Miller's testimony would have been the *only* evidence against him, the appendix record is silent on this point.

[7] The motion provided, in its entirety, that:

> Came this the 23rd day of April 2018 [the prosecuting attorney] and moves the Court to dismiss the above styled case. The State is unable to prosecute this Defendant without testimony from his codefendant, Holly Miller. Ms. Miller is incarcerated in Ohio and will not be released until sometime in 2019, therefore the State is unable to proceed at this time.

Fourth, the petitioner alleges that at the hearing on the motion to dismiss, "the State attempted to justify the dismissal, in part, on the ground that the Petitioner had not demanded a speedy trial." We have carefully examined the hearing transcript provided in the appendix record, and find no such statement made by the State. The entirety of the speedy trial discussion was as follows:

> THE COURT:   I'll grant the dismissal.
>
> DEFENSE COUNSEL:  With prejudice then obviously, right?
>
> THE COURT:   No.
>
> DEFENSE COUNSEL:   No?
>
> THE COURT:   No. I'm not.  He's not in custody.  If he was in custody, I'd - -
>
> DEFENSE COUNSEL:   But he has a right to have a trial fast and speedy without any –
>
> THE COURT:   I understand.  I understand.
> DEFENSE COUNSEL:   This will be the fifth time.
>
> THE COURT:   I understand.  I understand.  That's my – that's my decision.
>
> DEFENSE COUNSEL:   No.  No, he does not.
>
> THE STATE:   The State does not.
>
> THE COURT:   Okay.  We're adjourned.  Thank you.

Assuming defense counsel's statement to the court that "he has a right to have a trial fast and speedy" was sufficient to raise a speedy trial issue for this Court's

14

review,[8] we may dispose of the issue without extended discussion. This Court has held that "[t]he right to a trial without unreasonable delay is basic in the administration of criminal justice and is guaranteed by both the State and federal constitution. U.S. Const. Amend. VI; W. Va. Const., Art. 3, § 14." Syl. Pt. 1, *State v. Foddrell*. 171 W. Va. 54, 297 S.E.2d 829 (1982). In that regard, "'[i]t is the three-term rule, *W. Va. Code,* 62-3-21 [1959], which constitutes the legislative pronouncement of our speedy trial standard under Article III, Section 14 of the West Virginia *Constitution.*' Syl.Pt. 1, *Good v. Handlan,* 176 W.Va. 145, 342 S.E.2d 111 (1986)." Syl. Pt. 2, *State v. Carrico*, 189 W. Va. 40, 42, 427 S.E.2d 474, 476 (1993).

The Circuit Court of Wood County, West Virginia, is in the Fourth Judicial Circuit, and pursuant to Rule 2.03 of the West Virginia Trial Court Rules, its terms of court commence on the second Monday in January, May, and September. In the instant case, petitioner was indicted on May 18, 2017, during the May 2017, term of court.[9] It is well established in this Court's precedents that for purposes of a speedy trial computation under

---

[8] "This State has long followed the minority rule that 'it is the duty of the prosecution to provide a trial without unreasonable delay rather than the duty of the accused to demand a speedy trial.'" *State ex rel. Holstein v. Casey*, 164 W. Va. 460, 466, 265 S.E.2d 530, 534 (1980) (citing *State ex rel. Stines v. Locke*, 159 W. Va. 292, 295, 220 S.E.2d 443, 446 (1975)).

[9] May 8, 2017, was the second Monday of the month, and thus the day on which the May term began.

15

West Virginia Code § 62-3-21 (2014), the term of court in which a defendant is indicted does not count toward the "three-term rule" within which he or she must be tried.

> Under the provisions of Code, 62-3-21, as amended, the three unexcused regular terms of court that must pass before an accused can be discharged from further prosecution are regular terms occurring subsequent to the ending of the term at which the indictment was returned. The term at which the indictment was returned can not be counted as one of the three terms.

Syl. Pt. 1, *State ex rel. Spadafore v. Fox*, 155 W.Va. 674, 186 S.E.2d 833 (1972). Thus, the first term that "counts" here is the September 2017, term; the second term that "counts" is the January 2018, term, and the State's motion to dismiss without prejudice was orally granted on April 24, 2018, still within the second term. At the time the State filed its motion to dismiss the indictment, it still had until September 10, 2018, in which to try the petitioner; twenty weeks remained on the speedy trial clock. In summary, no matter what the State said or did not say about the petitioner's failure to demand a speedy trial, the fact is that the State did not fail to provide one.[10] Further, we decline to draw an inference that the State's motive in dismissing this case was to avoid a future speedy trial problem, in the absence of any evidence to support the petitioner's suspicion and conjecture.

Fifth, and finally, the petitioner claims that all of the State's actions and inactions in this case, taken together, demonstrate that dismissal of the case without

---

[10] The petitioner notes several times in his brief that the State made multiple motions for continuance during the course of the proceedings below, and that he objected to them all. This fact is irrelevant where, as here, the indictment was ultimately dismissed well within the statutory three-term limit established in West Virginia Code § 62-3-21.

16

prejudice falls within the *Myers* rubric, i.e., that the dismissal was not consonant with the public interest in the fair administration of justice. Specifically, the petitioner claims that the State did not act with dispatch in securing Ms. Miller's presence at trial, and further did not act with dispatch in negotiating a plea agreement with her; and thus, the State's opposition to his motion to sever ultimately put it in a position where it needed what he terms "an indefinite delay of Petitioner's trial and an open-ended continuance." Accordingly, the petitioner claims, the circuit court was led into error because it "did not have knowledge of all the relevant facts and circumstances surrounding the Motion to Dismiss."

We reject this argument, as it is not supported by any evidence. The transcript of the hearing on the motion to dismiss demonstrates that regardless of what the assistant prosecuting attorney had to say (which was almost nothing),[11] the petitioner's counsel forcefully argued all of the considerations listed above. Therefore, contrary to the petitioner's argument on appeal, the circuit court was in fact made aware of all facts and circumstances that the petitioner considers to be relevant. Additionally, the petitioner's claim is not supported by any law, as the cases upon which he relies, *Myers* and its progeny, do not contain any sort of bright-line rule as to when dismissal of a criminal case is proper. Rather, they list multiple factors which may be taken into consideration by a circuit

---

[11] As we noted earlier in this opinion, we do not approve of the prosecuting attorney's decision to send an assistant prosecuting attorney to a hearing to argue a motion she had never even seen.

17

court,[12] including whether the defendant is or has been incarcerated awaiting trial, and whether any prejudice would result from the passage of time. In the instant case, the petitioner was not incarcerated, as the court specifically noted; and further, he has not alleged any prejudice resulting from the dismissal of his case, and we do not discern any from our independent examination of the record.

In summary, although the record in this case shows that the State did not act with great dispatch in securing either Ms. Miller's presence or her testimony at the petitioner's trial, there is no evidence in the record from which this Court could conclude, or even reasonably infer, that the State acted in bad faith. The decision of the circuit court to grant the State's motion to dismiss, without prejudice, was based upon facts and circumstances known to the court and with due consideration for the rights of all parties. Accordingly, the decision is affirmed.

---

[12] Citing *State v. Lundeen*, 297 N.W.2d 232, 236 (Iowa Ct. App. 1980), the *Myers* court listed twelve factors: weight of the evidence of guilt or innocence; nature of the crime involved; whether the defendant is or has been incarcerated awaiting trial; whether defendant has been sentenced in a related or similar case; length of such incarceration; possibility of harassment; likelihood of new or additional evidence at trial; effect on the protection of society in case the defendant should actually be guilty; probability of greater incarceration upon conviction of another offense; the defendant's prior record; the purpose and effect of further punishment; and any prejudice resulting to the defendant by the passage of time. *Myers*, 173 W. Va. at 669 n.16, 319 S.E.3d at 793 n.16.

## IV. CONCLUSION

For the foregoing reasons, the judgment of the Circuit Court of Wood County, West Virginia, dismissing Criminal No. 17-F-168 without prejudice, is affirmed.

Affirmed.